# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 9, 2004 Session

## JEFF WILLARD v. GOLDEN GALLON-TN, LLC

**Appeal from the Circuit Court for Hamilton County**
**No. 2C1069      Samuel H. Payne, Judge**

---

### No. E2003-02628-COA-R3-CV     Filed August 10, 2004

---

This is a retaliatory discharge case wherein the Plaintiff/employee alleged that his employment was terminated, *inter alia*, in violation of the Family and Medical Leave Act and because he obeyed a lawful subpoena. The Trial Court granted the employer's motion for summary judgment. The employee appealed. We vacate the Trial Court's grant of summary judgment because we have determined that (1) a claim for retaliatory discharge in violation of Tennessee public policy lies in cases where a substantial factor in an employer's decision to terminate an employee is the fact that the employee honored a lawful subpoena, (2) a genuine issue of material fact exists as to whether the employee was terminated for honoring a lawful subpoena, and (3) a genuine issue of material fact exists as to whether the employee was terminated in violation of the Family Medical and Leave Act. Accordingly, we vacate the judgment of the Trial Court and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause Remanded

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J. joined.

Anita B. Hardeman and Kent Thomas Jones, Chattanooga, Tennessee, for the Appellant, Jeff Willard.

Donna J. Gilluly and Rosemarie L. Bryan, Chattanooga, Tennessee, for the Appellee, Golden Gallon-TN, LLC.

## OPINION

## I. FACTUAL BACKGROUND

From February 21, 2000, until July 29 or 31, 2001, Jeff Willard was employed by Golden Gallon-TN, LLC (hereinafter "Golden Gallon") as an hourly employee in its dairy plant in Hamilton County, Tennessee. An evaluation report generated by Golden Gallon in April of 2000 describes Mr. Willard as "very valuable, flexible" and "dependable" and notes that he is a "quick learner" who "needs little supervision". Later reports and other evidence indicate that Mr. Willard was subsequently tardy and absent from work on multiple occasions.

Although the facts are somewhat in dispute, Mr. Willard and Golden Gallon present various reasons for his failure to appear for work during the course of his employment. In February of 2001, Mr. Willard injured his knee on the job and missed a full day of work. He also missed six to eight partial days for follow-up medical treatment of this injury. Mr. Willard left work on at least six occasions for reasons he said were related to his minor son's attention deficit hyperactivity disorder and bipolar disorder. On several occasions, Mr. Willard missed work to go to his son Thomas' school to prevent his son from being expelled. Mr. Willard missed work one day in June of 2001 after being arrested on child abuse charges which were later dismissed. In late June, 2001, Mr. Willard initiated charges in juvenile court against his twelve year old son, Thomas, alleging that Thomas had sexually molested Mr. Willard's younger son. Mr. Willard was absent from his job because he was required to appear in court several times in connection with the molestation case. Mr. Willard missed at least one day of work to attend the wedding of his mother-in-law, one day for his own wedding, and he missed further time from work when he sought medical attention for shoulder pain. Golden Gallon alleges that Mr. Willard was also absent from work on occasions other than those described herein.

Golden Gallon's employee handbook, a copy of which was furnished to Mr. Willard, provides that excessive absenteeism may lead to termination of employment. The record shows that Mr. Willard was counseled about excessive absenteeism by his supervisor, Gail Smith, in January of 2001 and again on June 4, 2001. On July 23, 2001, Ms. Smith advised Mr. Willard that he had used all of his available vacation time and that she would not give him permission for any additional absences.

On July 31, 2001, a juvenile court hearing was scheduled in the molestation case against Mr. Willard's son. Mr. Willard attests that he advised his son's mother that he "was given a hard time about getting off work and told that if [he] left work [he] would be fired" whereupon she contacted the district attorney who indicated that he would fix the problem by issuing a subpoena for Mr. Willard, thereby leaving him with no choice but to go to court. Mr. Willard was served with the subpoena in the presence of his supervisor, Gail Smith, apparently one to two weeks before the scheduled hearing date. Mr. Willard stated that Gail Smith indicated to him that she did not wish to look at the subpoena and informed him that he "was not to leave work for the court appearance on July 31, 2001, regardless of what the subpoena said." According to Mr. Willard, his employment

was terminated by Gail Smith on July 31, 2001, as he was leaving for court with the subpoena in his hand.

On June 5, 2002, Mr. Willard filed a complaint against Golden Gallon in the Circuit Court for Hamilton County alleging that Golden Gallon violated the Family and Medical Leave Act (FMLA), 29 U.S.C. §2612 and the Tennessee Human Rights Act (THRA), Tenn. Code. Ann. §4-21-101, *et seq.* by discharging him. On August 20, 2002, Mr. Willard filed a motion to amend his complaint to include a third cause of action against Golden Gallon, asserting that his employment "was terminated for obeying a valid subpoena from a court of law, in violation of the public policy of the state of Tennessee." On March 6, 2003, Golden Gallon filed a motion for summary judgment accompanied by a statement of material facts. The Plaintiff filed a response agreeing as to some of the facts and disagreeing as to others.

After hearing argument of the parties and reviewing the record, the Trial Court entered an order on September 22, 2003, granting Golden Gallon's motion for summary judgment and dismissing all of Mr. Willard's claims. Thereafter, Mr. Willard filed the appeal now before us.

## II. ISSUES FOR REVIEW

We review two issues in this appeal:

1. Did the Trial Court err by granting summary judgment and dismissing Mr. Willard's claim of retaliatory discharge in violation of Tennessee public policy?

2. Did the Trial Court err by granting summary judgment and dismissing Mr. Willard's claim of retaliatory discharge in violation of the Family and Medical Leave Act?

## III. STANDARD OF REVIEW

Summary judgment proceedings are efficient and effective vehicles for concluding cases that can and should be decided on legal issues alone. However, these proceedings should not serve as a substitute for a trial of genuine and material factual matters. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1997); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgments should be awarded only when the moving party has demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R.Civ.P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W. 2d 23, 26 (Tenn. 1995).

No presumption of correctness attaches to the lower court's judgment and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. We must view the evidence in the light most favorable to the nonmoving party, which in this case is the Plaintiff, and we must draw all reasonable inferences in favor of the nonmoving party. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

## IV. TERMINATION IN VIOLATION OF PUBLIC POLICY

Applying this standard we now address the issue as to whether the Trial Court erred by granting summary judgment and dismissing the employee's claim that the termination of his employment by Golden Gallon violated Tennessee public policy. Specifically, Mr. Willard contends that Golden Gallon violated public policy because it fired him when he left work to honor the subpoena served upon him in the juvenile court proceeding against his son.

In Tennessee, the general rule is that an at-will employee may be fired for good cause, bad cause or no cause. *Payne v. Western & Atlantic Railroad Company,* 81 Tenn. 507, 519-520 (1884); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). However, the employer's right to terminate the employment relationship is not without limitation and the termination of such relationship may, under certain circumstances, give rise to a claim for retaliatory discharge. Both statutory and case law have placed restrictions upon an employer's freedom to discharge an employee, usually for reasons of clear public policy. *Chism v. Mid-South Milling Company, Inc.*, 762 S.W2d 552, 555 (Tenn. 1988).

In *Clanton v. Cain-Sloan Co.*, 677 S.W. 2d 441,445 (Tenn.1994), our Supreme Court first recognized a cause of action for retaliatory discharge of an at-will employee who had been fired for filing a worker's compensation claim. This cause of action was extended to other matters involving public policy in *Chism* wherein the Tennessee Supreme Court ruled that a claim for retaliatory discharge lies in cases where a violation of a clear public policy is a substantial factor in the termination of an at-will employee.

The Tennessee Supreme Court in *Chism* cited as one example of a clearly defined public policy which warrants the protection provided by a retaliatory discharge action the case of an employee who was discharged because she insisted upon obeying a lawful subpoena. *Chism*, 762 S.W.2d at 556 (citing *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C.1985)). This exception was also cited with approval by the Tennessee Supreme Court in the subsequent case of *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 824 (Tenn.1994), by the Court of Appeals, Middle Section, in *Sloan v. Tri-County Electric Membership Corp.*, No.M2000-01794-COA-R3-CV, 2002 Tenn. App. LEXIS 109, at *2 (Tenn. Ct. App. Feb. 7, 2002), *no appl. perm. app.*, and by the United States District Court for the Middle District of Tennessee in *Jeffreys v. My Friends Place, Inc*, 719 F.Supp. 639 (1989). In an unreported opinion of this Court, *Hackney v. DRD Management, Inc.*, No. E1999-02107-COA-R3-CV, 2000 Tenn. App. LEXIS 205, at *6 (Tenn. Ct. App. March 31, 2000) *appl. perm. appeal denied Dec. 4, 2000,* we cited *Chism* in support of the following statement:

> Examples of public policy for which an employee-at-will may not be discharged are filing a worker's compensation claim, refusing an employer's demand to commit perjury, *obeying a lawful subpoena*, participating in jury duty and refusing to falsify records. (Emphasis added.)

-4-

Other jurisdictions have recognized a retaliatory discharge cause of action for an employee's discharge due to the honoring of a subpoena. In *Ludwick*, cited by the *Chism* Court, the Supreme Court of South Carolina recognized a cause of action for retaliatory discharge for an employee who had been terminated for honoring a subpoena. Likewise in *Ressler v. Humane Society of Grand Forks,* 480 N.W. 2d 429 (N.D. 1992), the Supreme Court of North Dakota ruled that a public policy exception to the at-will doctrine precludes an employer from discharging an at-will employee for honoring a subpoena and testifying truthfully in a judicial proceeding. See also *Wiggins v. Southern Management Corporation*, 629 So.2d 1022 (Fla. 1993); *Kistler v. Life Care Centers of America, Inc.*, 620 F.Supp. 1268 (1985); *Shearson Lehman Brothers, Inc., v. Hedrich*, 639 N.E. 2d 228 (Ill. 1994); *Anderson v. Village of Oswego*, 109 F.Supp.2d 930 (2000); *Williams v. The Hillhaven Corporation*, 370 S.E. 2d 423 (N.C. 1988).

We observe, however, that in neither *Chism*, *Reynolds, Sloan,* nor *Hackney* did the issues on appeal specifically concern the termination of an employment relationship by reason of the fact that the employee honored a subpoena and, therefore, we are compelled to agree with Golden Gallon's assertion that the above referenced language from those cases in that regard is *dicta* and, as such, does not constitute binding authority. *Metropolitan Government of Nashville and Davidson County v. Reynolds*, 512 S.W.2d 6, 10 (Tenn. 1974). We are not otherwise aware of Tennessee case law which specifically addresses the issue of whether an employer who terminates an employment relationship because the employee chooses to honor a valid subpoena is thereby in violation of public policy. However, in addressing this issue in the case *sub judice,* we are compelled to conclude that a termination of employment under such circumstances is a violation of public policy based on references in previous decisions of our Supreme Court, authority from other states and clear statutory provisions.

It is noted in *Chism* at page 556 that public policy is usually "evidenced by an unambiguous constitutional, statutory or regulatory provision." Tennessee contempt statutes manifest a clear public policy that a lawfully issued subpoena be honored. Tenn. Code Ann. §29-9-102 provides in pertinent part as follows:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
> ...
> (3) The willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
>
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;

Tenn. Code Ann. §29-9-103(a) further provides that "[t]he punishment for contempt may be by fine or by imprisonment, or both." Tennessee case law has long held that a witness who willfully fails to appear in court after being issued a subpoena to testify is guilty of contempt, *State v. Rinehart*, 21 S.W. 524 (Tenn. 1893). Tennessee case law further provides that those who prevent one summoned to court from appearing are engaged in the "[a]buse of, or unlawful interference with, the process or proceedings of the court" and are, therefore, subject to sanctions for contempt. *McCarthy v. State*, 15 S.W. 736 (Tenn. 1890).

In addition to the above contempt statutes, we also note Tenn. Code Ann. §39-16-507 which provides in pertinent part as follows:

> (a) A person commits an offense who by means of coercion, influence or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:
> ...
>
> (3) Elude legal process summoning the witness to testify or supply evidence, or to be absent from an official proceeding to which the witness has been legally summoned.

Tenn. Code Ann. §29-9-102(3) (4), §29-9-103(a), and Tenn. Code Ann. §39-16-507 evidence a clear public policy, as expressed by the Legislature of our state, that a lawfully issued subpoena shall be honored both by the person against whom it is issued and others. Such a policy is in accord with society's self-evident goal of maintaining the integrity of its judicial system by insuring access to evidence necessary to the administration of justice.

Accordingly, we hold that a claim for retaliatory discharge in violation of public policy lies in cases where a substantial factor in an employer's decision to terminate an employee is the fact that the employee honored a lawful subpoena.

Golden Gallon asserts that its decision to terminate Mr. Willard's employment "was made in light of all of Willard's absences, not just his last absence, which happened to involve a subpoena to go to court." Golden Gallon indicates that "the at-will employment doctrine should not be circumvented for this situation."

In *Chism* at page 556, the Court acknowledged that before an at-will employer will be liable for retaliatory discharge for violating a public policy "the violation must be a substantial factor" in the termination of employment. In *Thomason v. Better-Bilt Aluminum Products, Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992) we found that, in order to reach the jury on the substantial factor issue, the plaintiff must either offer "direct evidence" or "compelling circumstantial evidence" that the retaliatory reason was a substantial factor in the termination. In this case, we discern "compelling circumstantial evidence" which could support a finding that Mr. Willard would not have lost his job had he not left work to honor the subpoena.

-6-

In his affidavit filed in this cause, Mr. Willard states that Gail Smith "informed me that I was not to leave work for the court appearance on July 31, 2001, regardless of what the subpoena stated" and that Gail Smith "personally terminated me on July 31, 2001 on the way out the door with the subpoena in my hand." Furthermore, Gail Smith's own deposition testimony indicates that Mr. Willard's employment was terminated for leaving work to honor the subpoena and that, until he did so, she had not made a decision in that regard:

Q Why didn't it make a difference to you that he was under subpoena when he took a day off to go to court in obedience to the subpoena?

A Well, he was counseled long before this of termination for absenteeism if he were out again.
...

Q When did you decide Mr. Willard needed to be terminated?

A He was terminated - - he terminated himself technically because he was out after - - after the counseling.

Q And he was out for what reason?

A I'm not sure. He said he was going to court.
...

Q Did the subpoena say that he was going to court?

A I didn't read the subpoena.

Q Until that time had you formed an opinion in your mind that Mr. Willard should be terminated?

A No.

Based upon the testimony of Mr. Willard and Ms. Smith, it could reasonably be inferred by a finder of fact that Mr. Willard's decision to honor the subpoena, which decision necessitated his absence from work, was a substantial factor in Golden Gallon's termination of his employment.

Golden Gallon apparently also contends that Mr. Willard's claim of retaliatory discharge in violation of public policy is not properly before this Court, arguing that the claim was raised only in a motion to amend and not in an amended complaint.

Golden Gallon submits no supporting authority for this argument and under *State v. Brown*, 795 S.W.2d 689, 698 (Tenn.Cr.App. 1990) it appears that this argument is waived. Notwithstanding this waiver, it is our determination that Mr. Willard's failure to file an amended complaint and the Trial Court's failure to enter an order addressing his motion in that regard was harmless error in view of the fact that Golden Gallon fails to demonstrate that it suffered any prejudice in consequence of these oversights. Golden Gallon addressed Mr. Willard's "claim for violation of 'public policy'" in its motion for summary judgment and supporting memorandum of law, making the same arguments it presents in this appeal - that Tennessee does not recognize an action for violation of public policy for discharging an employee who honors a valid subpoena and that Golden Gallon's decision was merely a business decision to terminate an employee because of frequent absenteeism. Golden Gallon does not maintain that its defense would have been any different had the amended complaint and order been filed. Nor does Golden Gallon assert that Mr. Willard's public policy claim was not considered by the Trial Court when the Court granted the motion for summary judgment and the Court includes Mr. Willard's "claim for an alleged violation of Tennessee Public Policy" as one of the claims dismissed in its order granting that motion.

## V. TERMINATION IN VIOLATION OF FMLA

The remaining issue we address in this appeal is whether the Trial Court erred in dismissing Mr. Willard's cause of action under the Family and Medical Leave Act (FMLA), codified at 29 U.S.C. §2601, *et seq.*

The FMLA requires that a covered employer provide an eligible employee with twelve weeks of leave during any twelve month period for various reasons which are set forth at 29 U.S.C. §2612(a)(1), including the following:

> (C) In order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious health condition;
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

It does not appear to be disputed that Golden Gallon is an employer covered by the FMLA or that Mr. Willard is an eligible employee under the FMLA. However, Golden Gallon argues that, because Mr. Willard was not absent to care for a "serious health condition" and did not provide the required notice that would have triggered the obligation to provide FMLA leave, summary judgment dismissal of his claim is appropriate.

With respect to its argument that Mr. Willard was not absent to care for a serious health condition, Golden Gallon notes that under 29 U.S.C. §2611(11) a serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves",

(A) inpatient care in a hospital, hospice, or residential medical care facility, or

(B) continuing treatment by a health care provider.

Citing *Marchisheck v. San Mateo County*, 199 F.3d 1068 (9th Cir. 1999), Golden Gallon further maintains that an employee is not entitled to leave under the FMLA for absences to "care for" a family member absent proof that the employee was involved in some level of participation in ongoing treatment of the condition suffered.

Golden Gallon contends that "[Mr.] Willard's absence to attend court to determine how to deal with his son's alleged abuse of a sibling does not fall under the auspices of the FMLA" in that Mr. Willard "was not participating in ongoing treatment with a health care provider when he was attending court and no health care provider was even involved in his attendance at court." Golden Gallon further contends that Mr. Willard was not entitled to leave under the FMLA to attend physical therapy for his knee injury because he testified in his deposition that he never attended physical therapy for that injury.

We do not necessarily disagree with Golden Gallon's argument that Mr. Willard was not engaged in the care of Thomas, in the sense of participating in the ongoing treatment of Thomas' alleged psychological condition, when he attended the referenced court hearing. However, evidence is presented that Mr. Willard's court appearance was not the only occasion he was absent from work as a result of Thomas's medical condition. In his affidavit Mr. Willard asserts that "on at least six occasions [he] was forced to leave work due to Thomas' medical condition" and that he "always brought doctor's excuses to Gail Smith." Viewed in a light most favorable to Mr. Willard, we are compelled to find that this testimony constitutes proof which creates a genuine issue of fact as to whether Mr. Willard was at times absent from work because he was caring for Thomas by participating in his ongoing treatment.

We are further compelled to disagree with Golden Gallon's assertion that Mr. Willard "clearly stated in his deposition that he never attended physical therapy for his own knee injury." The following portion of Mr. Willard's testimony is referenced in support of this assertion:

Q: And did you have to have any physical therapy for this injury?

A: I wasn't given a prescription for physical therapy. Anything that was done was done at the doctor's office.

We disagree that this testimony amounts to an unequivocal statement by Mr. Willard that he did not undergo physical therapy for his injury. We believe that a reasonable construction of this testimony is that whatever treatment Mr. Willard received for his injury, whether such treatment consisted of physical therapy or not, was received at that doctor's office. In any event, Mr. Willard's affidavit otherwise creates a genuine issue of material fact as to whether he received "continuing treatment by a health care provider" with respect to his knee injury and

whether his absence from work because of those treatments contributed to the termination of his employment:

> 9. As a result of this injury, I had to make arrangements with my doctor to go to the doctor's office for follow-up appointments approximately once per week for 6-8 weeks. The doctor's office closed at 5:00, and I had to leave Golden Gallon at 4:30 to get there on time. Gail Smith informed me what days I could take off early for these appointments, then she later reprimanded me verbally for taking this time off.

> 10. I presented appropriate medical excuses for each of these doctor's visits, and Gail Smith had a ledger which reflected these excuses.

> 11. I was paid for these doctor's visits, however they were counted against me as a full day's absence each time. I was informed of this fact by Gail Smith.

Golden Gallon additionally argues that summary judgment was appropriate in this case because Mr. Willard did not present proof that he provided notice indicating that his absences were covered as leave under the FMLA.

As Golden Gallon acknowledges in its brief, citing *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 852(8th Cir. 2002), "[u]nder the FMLA, an employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." However, the Court in *Spangler* further recognized that "'[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work'" (Citing *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999)). This latter statement was reiterated by the Sixth Circuit Court of Appeals in *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 450 (6th Cir. 1999) as follows:

> An employee does not have to expressly assert his right to take leave as a right under the FMLA. *See Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761 (5th Cir. 1995) (citing *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1038 (M.D. Tenn. 1995)). Once an employer is given notice that an employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA.

We have referenced attestations in Mr. Willard's affidavit to the effect that he left work several times due to his son's medical condition and that he brought doctor's excuses to his supervisor in that regard. We have also referenced Mr. Willard's attestations that he was absent from work on multiple occasions to receive medical treatment for his knee injury and that he apprised his supervisor that was the reason for his absence on each of these occasions. It is our

determination that, based upon this evidence, the trier of fact could reasonably conclude that Mr. Willard provided Golden Gallon with sufficient notice that he was requesting leave for a condition covered under the FMLA.

In support of its argument that it had no duty to inquire as to whether Mr. Willard was entitled to FMLA leave, Golden Gallon cites the case of *Stoops v. One Call Comm., Inc.*, 141 F.3d 309 (7th Cir. 1998). Golden Gallon states that *Stoops* sets forth the following as "factors tending to show that an employer [does] not have a duty to inquire further into an employee's entitlement to FMLA leave":

> [T]he employee was adequately notified of his or her FMLA rights; the employee had a history of unexcused absences; the employee had taken leave before under the FMLA; the [employer][1] had recently heard from the employee's doctor that the employee was able to work despite the employee's impairment; and the employee had mentioned that he or she had a serious health condition, but did not indicate a need for time off for treatment.

As in the matter *sub judice,* the plaintiff employee in *Stoops* filed suit against his former employer under the FMLA after he was fired for excessive absences. In that case the employee began missing work when he began experiencing various symptoms which included confusion, nausea and chest pains. His physician determined that he was suffering from chronic fatigue syndrome and, at his employer's urging, the employee began taking full-time FMLA leave. However, when the employee's physician was asked to provide certification that would qualify the employee for FMLA leave, the physician indicated that, although the employee suffered from a serious chronic health condition, he was not incapacitated and would not have to work intermittently or on a reduced work schedule. Consequently the physician certified that the employee was not qualified for FMLA leave. Thereafter, the employee missed several days of work, notifying his employer that he was absent because of chronic fatigue syndrome and he was subsequently fired for excessive absenteeism. On appeal the employee argued that, with regard to those absences occurring after his physician certified that he was not qualified for FMLA leave, once he notified his employer that he was absent due to chronic fatigue syndrome the employer had a duty to investigate further and request a second medical certification if it wanted verification of his condition. The Court disagreed and held that when an employer receives medical certification which indicates that an employee need not miss work because of a serious health condition, the employer may rely on that certification until the employee provides a contradictory medical opinion. The Court in *Stoops* does not indicate that its decision was based upon any of the factors listed by Golden Gallon other than that "the [employer] had recently heard from the employee's doctor that the employee was able to work despite the employee's impairment." We disagree that *Stoops* supports Golden Gallon's argument that there is

---

[1]Golden Gallon uses the word "employee" here. We assume this is a typographical error and have made this correction in accord with the facts as set forth in *Stoops*.

insufficient evidence that it received adequate notice that Mr. Willard's absences might qualify as leave under the FMLA.

The Trial Court's order granting Golden Gallon's motion for summary judgment does not set forth the specific grounds upon which the Court based its ruling; however, our analysis of the record compels us to conclude that summary judgment is not proper in this case and that Golden Gallon's arguments to the contrary are without merit.

## VI.  CONCLUSION

For the foregoing reasons the judgment of the Trial Court is vacated and the cause is remanded for further proceedings consistent with this opinion.  Costs of appeal are adjudged against Golden Gallon TN, LLC.

_____

**SHARON G. LEE,  JUDGE**