**LaMarquist MATTHEWS, et al., Plaintiffs,**

**v.**

**Stephanie A. STORGION, M.D., et al., Defendants.**

**No. 03-2600-D.**

United States District Court, W.D. Tennessee, Western Division.

Sept. 9, 2004.

T. Robert Hill, Esq., Randall J. Phillips, Hill, Boren, Jackson, TN, for Plaintiffs.

James M. Allen, Memphis, TN, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is the motion of Stephanie A. Storgion, M.D.; Teresa J. Sigmon; Sigmon Law Firm; and State Volunteer Mutual Insurance Company ("SVMIC") (collectively "Defendants") to dismiss the complaint or in the alternative for summary judgment. LaMarquist Matthews, a minor by and through the legal guardian of his estate; Danny J. Barfield, Agent for HD Vest Financial Services; the Law Firm of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando; and the Law Firm of Meador & Crump (collectively "Plaintiffs") assert claims for 1) abuse of process, 2) intentional interference with a business relationship, 3) inducement and procurement of breach of contract, 4) coercion of a witness, and 5) for punitive damages for intentional, malicious, and reckless conduct. Defendants propound numerous arguments in favor of summary judgment.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment.

### I. *FACTUAL AND PROCEDURAL BACKGROUND* [2]

On September 14, 1998, a medical malpractice action was initiated in the state courts by Danny J. Barfield, the legal guardian of the estate of LaMarquist Matthews, on Matthews' behalf against LeBonheur Children's Medical Center; Gregory Stidham, M.D.; U.T. Medical Group, and Jane or John Doe # 1–6. On November 4, 1999, Stephanie Storgion, M.D., was added as a defendant.

Teresa J. Sigmon and the Sigmon Law Firm were retained by SVMIC, Dr. Storgion's professional liability insurance carrier, to represent Dr. Storgion in the malpractice suit. The law firms of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, and Meador & Crump were retained to represent Matthews, by and through his legal guardian. Thereafter, the law firms employed by Matthews' guardian retained the services of Walter Scott, Ph.D. Dr. Scott was initially disclosed to be an expert witness. In 1999, for the first time, the defendants in the malpractice case attempted to have Dr. Scott excluded as an expert witness based on his lack of experience in treating patients with the medical device at issue. The state court determined that Dr. Scott would not be considered an expert for the purpose of testifying as to the applicable standard of care.

After the state court's ruling, Ms. Sigmon deposed Dr. Scott on July 6, 2000. During the deposition, Dr. Scott stated that he was employed by the Food and Drug Administration ("FDA"). He further told Ms. Sigmon that he was prohibited by the FDA from testifying as an expert witness, however, he was working for the plaintiffs in the capacity of a fact witness and/or consultant for which he received $175 per hour for his work. Dr. Scott stated that his testimony related to

1. Although the motion is styled as one to dismiss or in the alternative for summary judgment, the Court finds that the motion is properly a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) (stating that if "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided for in Rule 56....").

2. The facts are taken from the pleadings and the parties' motions and response.

the use of the medical device in question and would not include any medical opinions as he was not a medical doctor. He told Ms. Sigmon that he had completed a form for outside activity which was then submitted to the ethics department and that he had received approval from the FDA to serve as a consultant and as a fact witness for the plaintiffs. Dr. Scott asserted that in the request form he had described his role as "serving as a consultant and a witness of fact in a civil liability case involving a medical device that [he] work[ed] with. And, [he] was relying upon [his] experience and [ ] education." Dr. Scott stated that he believed that his request was approved. Dr. Scott told Ms. Sigmon that he had not disagreed to testify in the case, however, he had to determine whether the FDA policy would allow him to do so.

On December 3, 2001, the defendants in the malpractice case again sought to exclude Dr. Scott from testifying at trial, asserting that he was not qualified to testify as to the recognized standard of acceptable professional practice. The plaintiffs responded that Dr. Scott would not testify as to the acceptable professional practice, but instead would offer facts regarding the federal government's efforts to educate the medical community regarding the complications and risks of malpositioning the medical device at issue. The defendants then filed another motion in limine to exclude the testimony of Dr. Scott, asserting that his testimony, in effect, related to the applicable standard of care. The state court denied the motions.

On August 15, 2002, Ms. Sigmon e-mailed Dr. Scott's supervisor at the FDA, requesting a copy of any file containing the FDA's approval for Dr. Scott to be involved in the case along with any other items related in any way to Dr. Scott's involvement in the case or in any other case. She also requested all internal documents that outlined the parameters for FDA employees' participation in litigation. On August 27, 2002, Ms. Sigmon contacted Lana Ogram of the FDA via correspondence again seeking information concerning FDA regulations related to their employees offering testimony along with information pertaining to Dr. Scott. She also mailed Ms. Ogram a copy of the deposition. Ms. Sigmon contacted Ms. Ogram on October 24 and December 23, 2002 and January 27, 2003, regarding her August 27, 2002 correspondence.

On January 9, 2003, Dr. Scott sent the plaintiffs in the malpractice case a letter in which he withdrew his services, stating that his employer informed him that he should not give "testimony" in outside legal contests that may involve the FDA. In the letter, Dr. Scott stated that "Teresa Sigmon's inquiry has apparently raised the specter of the possible impression of wrong-doing on [his] part...." On January 15, 2003, the plaintiffs filed a motion in which they complained that the defendants' conduct resulted in the withdrawal of Dr. Scott's assistance in the case. A hearing on the motion was held on January 31, 2003. Despite Dr. Scott's withdrawal from the case, the court did not rule on the appropriateness of Ms. Sigmon's conduct.

On January 30, March 25, April 7, and May 13, 2003, Ms. Sigmon again contacted Ms. Ogram regarding the status of her August 2002 request. On May 31, 2003, Ann Curtsinger of the FDA responded to Ms. Sigmon indicating that her request was partially completed and that more materials would follow. On August 22, 2003, Darlene Christian of the FDA responded to Ms. Sigmon informing her that although Dr. Scott's personnel records were enclosed, his personal information, such as his social security number, was redacted.

Ms. Sigmon appealed the denial of this information.

The plaintiffs in the malpractice claim retained an individual to replace Dr. Scott. Thereafter, Plaintiffs filed the instant action based on Ms. Sigmon's conduct in the malpractice lawsuit.

Defendants filed a motion for summary judgment in December 2003 and since have filed seven supplemental memoranda. Plaintiffs filed a response on August 20, 2004.

## II. *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed.1998).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2721, at 40 (2d ed.1998). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River,* 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. *ANALYSIS*

Defendants raise several general arguments in support of their motion for summary judgment. Defendants first assert that the Court should dismiss Plaintiffs' claims because Defendant Sigmon's conduct was done in furtherance of her duty to zealously represent her client. Defendants cite Rule 1.3 of the Rules of Professional Conduct which provides that in acting zealously for a client's position, an attorney "shall act with reasonable diligence and promptness in representing a client." Furthermore, the comments to Rule 1.3 provide in pertinent part that

> [a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.

Defendants argue that Defendant Sigmon's conduct conformed with the custom and practice of the Memphis legal community and the recognized standard of acceptable professional legal practice. Plaintiffs assert that Defendant Sigmon's conduct was improper and unlawful. Specifically, Plaintiffs contend that Defendant Sigmon's repeated *ex parte* contact and communications with the employer and supervisors of an opposing party's retained expert witness, after the close of discovery and after multiple attempts to exclude Dr. Scott were denied, were inappropriate.

Both of the parties attached the affidavits of various attorneys in the Memphis legal community to establish that Defendant Sigmon's conduct was either proper or improper. Plaintiffs further point out that Defendant Sigmon had not acted in such a manner previously and had no knowledge of other attorneys acting in a like manner. Plaintiffs also argue that *ex parte* communication with an opposing party's retained expert or his employers is condemned in many states. *See e.g., Erickson v. Newmar Corp.,* 87 F.3d 298, 302 (9th Cir.1996); *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984); *In re Firestorm,* 129 Wash.2d 130, 916 P.2d 411, 419 (1996). Plaintiffs further argue that the Oregon State Bar has opined that an attorney can be held responsible for the use of harassing investigation techniques pursuant to the state's rules of professional conduct. *See* Formal Opinion 1992–132 of the Oregon State Bar.

There appears to be no case law in Tennessee which addresses the issue of whether *ex parte* communication with the employer of the opposing party's witness is improper. Tennessee Rule of Civil Procedure 26.02(4), however, is patterned after Fed.R.Civ.P. 26(b)(4) which provides that discovery of experts "may be obtained only" as provided by the discovery rules, i.e., not *ex parte* outside of the discovery process. Moreover, the affidavits filed by the parties in support of their positions clearly establish that a genuine issue of material fact exists as to whether Defendant Sigmon's conduct was proper. Accordingly, the Court finds that Defendants' argument that Defendant Sigmon's conduct was proper, as it was performed in her role as a zealous advocate, is not sufficient to support the dismissal of Plaintiffs' claims at this time.

Defendants next assert that the claims should be dismissed because the gravamen of Plaintiffs' claims is legal malpractice. Defendants contend therefore that because they owed no duty to Plaintiffs, then they cannot be liable to Plaintiffs. The complaint, however, asserts various causes of action arising from Defendant Sigmon's conduct. None of these include a claim for legal malpractice. While the underlying

facts could potentially give rise to a claim for a legal malpractice claim if it were determined that Defendant Sigmon's conduct was in fact inappropriate, the claims raised by Plaintiffs are claims for intentional torts based on the conduct. The Court finds therefore that Defendants' argument that the complaint is really one for legal malpractice is unavailing.

Defendants next assert that the complaint should be dismissed because the records and information sought by Defendant Sigmon were available to all citizens pursuant to the Freedom of Information Act, 21 CFR § 20. The FDA's policy regarding the disclosure of records provides that:

> The [FDA] will make the fullest possible disclosure of records to the public, consistent with the rights of individuals to privacy, the property rights of persons in trade secrets and confidential commercial or financial information, and the need for the agency to promote frank internal policy deliberations and to pursue its regulatory activities without disruption. Except where specifically exempt pursuant to the provisions of this part, all [FDA] records shall be made available for public disclosure.

21 CFR § 20.20. Plaintiffs respond that, although the Freedom of Information Act does permit persons to obtain information similar to that sought by Defendant Sigmon, Defendant Sigmon's actions were in violation of Rule 8 of the Supreme Court of Tennessee and the Tennessee Rules of Professional Responsibility.

Rule 8 pertains to the manner in which attorneys are expected to behave in the course of their duties. Specifically, Rule 8 establishes that attorneys should conduct themselves in conformance with the Rules of Professional Responsibility. Moreover, Rule 8(5) provides that

> A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.

Therefore, while it appears to be without question that one is entitled to rely on the Freedom of Information Act when seeking information such as that sought by Defendant Sigmon, the question remains of whether Defendant Sigmon's conduct was proper in light of Tennessee law. Thus, given the manner in which the information was sought, outside of the discovery process, the Court finds that questions remain which are not answered by Defendants' argument that they acted legally pursuant to the Freedom of Information Act. Accordingly, the Court denies Defendants request for summary judgment based on this argument.

The remainder of Defendants' arguments are specific to the individual claims raised by Plaintiffs. The Court therefore will address each claim individually.

### A. *Abuse of Process*

Defendants assert that the Court should dismiss Plaintiffs' claim for abuse of process because Plaintiffs have not established that Defendant Sigmon was motivated by an improper motive. " '[T]he gist of the tort [of abuse of process] is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.' " *Givens v. Mullikin,* 75 S.W.3d 383, 400 (Tenn.2002) (citations omitted). To recover for abuse of process, a plaintiff must establish therefore "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (citations omitted).

The test to determine whether process has been abused is "whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." *Id.* (citations omitted). "An action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon 'to compel [another party] to pay a different debt or to take some action or refrain from it.' " *Id.* (citations omitted).

Defendants assert that, based on Defendant Sigmon's affidavit in which she states that her primary goal in contacting the FDA was to rigorously defend her client, Plaintiffs have failed to establish that she was motivated by an ulterior motive. "The intent with which an act was done may be proved by the defendants by the declarations of the party concerned, or by facts and circumstances from which the existence of the intent may be reasonably inferred." *Stuart v. Hayden,* 169 U.S. 1, 9, 18 S.Ct. 274, 42 L.Ed. 639 (1898). "Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." 10a Wright, Miller & Kane, *Federal Practice and Procedure* § 2730 at 7 (3d ed.1998). "Cases involving malice also necessarily call defendant's state of mind into question and summary judgment often will be refused when [the] issue is raised." *Id.* at 9.

In the instant action, Defendant Sigmon contacted Dr. Scott's employer after the close of discovery and more than two years after she had deposed Dr. Scott. In addition to using her role as the attorney for Dr. Storgion in the medical malpractice case to secure Dr. Scott's employment information and personnel records, Defendant Sigmon also used her position to "notify" the FDA of Dr. Scott's involvement in the case and to apparently intimate that his conduct was not proper. The Court finds therefore that a genuine issue of material fact exists as to Defendant Sigmon's intent, such that summary judgment of this claim is not appropriate. Accordingly, the Court denies Defendants' motion for summary judgment of Plaintiffs' claim for abuse of process.

### B. *Intentional Interference With A Business Relationship*

Defendants assert that the Court should dismiss Plaintiffs' claim for intentional interference with a business relationship because 1) there was no intent by Defendant Sigmon to interfere with the relationship between Dr. Scott and Plaintiffs; 2) there was no valid business relationship between Dr. Scott and Plaintiffs; and 3) Plaintiffs failed to demonstrate the existence of damages. To establish a claim for intentional interference with a business relationship, a party must show

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;
>
> (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general;
>
> (3) the defendant's intent to cause the breach or termination of the business relationship;
>
> (4) the defendant's improper motive or improper means; and
>
> (5) damages resulting from the tortious interference.

*Trau-Med of Amer., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn.2002). Ill

will or malice must also be established. *Stone v. Faulkner, Mackie & Cochran,* 2001 WL 46981, *2 (Tenn.Ct.App.2001). Examples of conduct which may establish an improper motive are:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Trau-Med of Amer., Inc.,* 71 S.W.3d at 701.

Defendants first contend that there was no intent by Defendant Sigmon to interfere with any business relationship held by Dr. Scott and Plaintiffs. Defendants assert that Defendant Sigmon's only intent was to be an effective advocate for her client. Plaintiffs argue that, as here, when the issue of the actual intent of the party is in question, courts should not summarily dismiss a claim based on the party's declaration of his or her intent.

"The intent with which an act was done may be proved by the defendants by the declarations of the party concerned, or by facts and circumstances from which the existence of the intent may be reasonably inferred." *Stuart v. Hayden,* 169 U.S. 1, 9, 18 S.Ct. 274, 42 L.Ed. 639 (1898). "Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." 10a Wright, Miller & Kane, *Federal Practice and Procedure* § 2730 at 7 (3d ed.1998). "Cases involving malice also necessarily call defendant's state of mind into question and summary judgment often will be refused when [the] issue is raised." *Id.* at 9.

In the instant action, Defendant Sigmon contacted Dr. Scott's employer after the close of discovery and more than two years after she had deposed Dr. Scott. Likewise, she sent repeated letters and e-mails to Dr. Scott's employers and apparently suggested to them in some manner that Dr. Scott had acted in violation of FDA policy by his participation in the case. Even after Dr. Scott had withdrawn from the case, Defendant Sigmon continued to contact Dr. Scott's employers. The Court finds that a genuine issue of material fact exists as to what her intent was.

Defendants next argue that there was no valid business relationship between Dr. Scott and Plaintiffs. The record reflects that Dr. Scott was paid $175 per hour to serve as a consultant, expert witness, and/or witness of fact. Dr. Scott received three approvals by the FDA to provide services to Plaintiffs.[3] Defendant Sigmon deposed Dr. Scott in his capacity as a consultant, expert witness, and/or witness of fact for Plaintiffs. Thus, it appears that Plaintiffs maintained a business relationship with Dr. Scott whereby Dr. Scott provided services in return for monetary compensation. Likewise, the Court concludes, based on Dr. Scott's deposition and the numerous motions to exclude Dr. Scott's testimony, that Defendants were aware of the business relationship.

3. The Court makes no determination at this time in what capacity Dr. Scott served. Moreover, the Court makes no determination at this time as to what the extent of the approval was which was given by the FDA.

Finally, Defendants assert that Plaintiffs have failed to demonstrate the existence of damages based on Dr. Scott's withdrawal. Plaintiffs attached an affidavit in which they assert that they have suffered damages including the amount of compensation provided to Dr. Scott for his services, the amount of money and time required to secure another witness to replace Dr. Scott, and the time that the litigation in the underlying case had to be delayed in order to secure a replacement. The Court finds that there is a genuine issue of material fact as to whether Plaintiffs suffered damages. Accordingly, the Court denies Defendants' motion for summary judgment of Plaintiffs' claim for intentional interference with a business relationship.

### C. *Inducement To Breach A Contract*

Defendants next argue that the Court should dismiss Plaintiffs' claim for inducement to breach a contract because 1) Plaintiffs failed to show the existence of a valid/legal contract, and 2) Plaintiffs have not established that Defendants acted maliciously. Section 47–50–109 of the Tennessee Code Annotated provides:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Thus, to establish either a claim for common law or statutory inducement to breach a contract, a party must establish that (1) a legal contract existed; (2) the defendant was aware of the contract; (3) the defendant intended to induce a breach of contract; (4) the defendant acted with malice; (5) a breach of the contract occurred; (6) the breach was a proximate result of the defendant's conduct; and (7) the breach injured the plaintiff. *Givens,* 75 S.W.3d at 405.

Defendants first argue that there was no legal contract because Dr. Scott and Plaintiffs had no mutual assent as to what capacity Dr. Scott was to serve. The record reflects that both Dr. Scott and Plaintiffs intended that Dr. Scott was retained by the plaintiffs to act as a consultant, expert witness, and /or witness of fact. The Court finds that it appears that there was mutual assent by the parties to enter into a contract whereby Dr. Scott provided his services in return for monetary compensation. The Court therefore finds Defendants' argument unavailing.

Defendants next argue that the contract was illegal, and thus unenforceable. For a contract to be enforceable in Tennessee, it cannot be executed in violation of the law. *Ledbetter v. Townsend,* 15 S.W.3d 462, 464 (Tenn.Ct.App.1999). Defendants assert that the contract between Dr. Scott and Plaintiffs was illegal because it was in violation of FDA regulations. Title 21, § 20.1(a) of the Code of Federal Regulations provides:

> No officer or employee of the Food and Drug Administration or of any other office or establishment in the Department of Health and Human Services, except as authorized by the Commissioner of Food and Drugs pursuant to this section or in the discharge of his official duties under the laws administered by the Food and Drug Administration, shall give any testimony before any tribunal pertaining to any function of the Food and Drug Administration or with respect to any information acquired in the discharge of his official duties.

Defendants argue that Dr. Scott was prohibited by federal regulation from tes-

tifying in the malpractice case, and as such the contract was illegal, because the testimony Dr. Scott would have given related to work he did in his employment with the FDA. The record indicates that Dr. Scott filed three requests for approval of outside activity related to his role in the underlying malpractice case. The first two requests indicate that Dr. Scott sought approval to provide consulting service, related to "information generally available to the public, relative to scientific and medical fields, earned though [Dr. Scott's] education and experience." On February 18, 2000, Dr. Scott submitted a third request. The third request describes the nature of the activity as a " 'witness of fact' in a civil law case not involving the government to provide factual information about a device type." Prior to submitting the third request, Dr. Scott e-mailed Patricia Bianchi to determine whether such involvement was permitted. The e-mail asks, "Can [an FDA employee] be a 'witness of fact' in a civil case not involving the government? In [the] capacity as 'witness of fact' [the employee] will be asked to provide factual data about a device type (e.g., how it operates, what it is designed to do) but not be asked to provide testimony endorsing one product over another. The litigants include patients, doctors and a hospital." Ms. Bianchi responded that such action was permitted as long as the employee submitted an outside activity form, the form was approved by the employee's supervisor, and then is approved by Ms. Bianchi. Dr. Scott received approval for all three of the requests for approval of outside activity.

Although Defendants assert that the contract was not legal based on federal regulations, Dr. Scott received three approvals from his supervisors. The federal regulations may have prohibited Dr. Scott from offering his testimony, however, based on the record before the Court it is not clear whether such is the case. The Court finds therefore that a genuine issue of material fact exists as to whether Dr. Scott and Plaintiffs had a legally enforceable contract.[4]

Defendants finally assert that Plaintiffs failed to assert or establish that Defendant Sigmon acted with malice. As noted *supra,* "The intent with which an act was done may be proved by the defendants by the declarations of the party concerned, or by facts and circumstances from which the existence of the intent may be reasonably inferred." *Stuart v. Hayden,* 169 U.S. 1, 9, 18 S.Ct. 274, 42 L.Ed. 639 (1898). "Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." 10a Wright, Miller & Kane, *Federal Practice and Procedure* § 2730 at 7 (3d ed.1998). "Cases involving malice also necessarily call defendant's state of mind into question and summary judgment often will be refused when [the] issue is raised." *Id.* at 9. The Court finds therefore that a genuine issue of material fact exists as to Defendant Sigmon's intent. Accordingly, the Court denies Defendants' motion for summary judgment of Plaintiffs' claim for inducement for breach of contract.

### D. *Coercion Of A Witness*

Defendants next assert that Plaintiffs' claim for violation of Tenn.Code Ann.

4. Defendants assert that Plaintiffs will be unable to establish at trial that Dr. Scott could have legally provided consultation services or testified. The Court finds that is unnecessary at this time to make such a determination because the record before the Court is sufficient to create a genuine issue of fact as to whether Dr. Scott could have done either.

§ 39–16–507 should be dismissed because the statute does not create a private cause of action. Section 39–16–507 provides that

(a) A person commits an offense who, by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:

(1) Testify falsely;

(2) Withhold any truthful testimony, truthful information, document or thing; or

3) Elude legal process summoning the witness to testify or supply evidence, or to be absent from an official proceeding to which the witness has been legally summoned.

(b) A violation of this section is a Class D felony.

Tenn.Code Ann. § 39–16–507.

To determine whether a state statute implies a private right of action, Tennessee courts have used the standard enunciated by the United States Supreme Court for finding a private right of action in a federal statute. *See Buckner v. Carlton,* 623 S.W.2d 102, 105–06 (Tenn.Ct.App. 1981). "The touchstone of the analysis is legislative intent: whether the legislature intended in passing the statute to provide a private right of action." *Ergon, Inc. v. Amoco Oil Co.,* 966 F.Supp. 577, 583 (W.D.Tenn.1997) (citations omitted). Factors for courts to use when determining whether a private remedy implicitly exists in a statute include whether 1) the plaintiff is a member of the class intended to benefit from the statute, 2) there is any indication of a legislative intent to create a private right of action under the statute, and 3) a private cause of action is consistent with the underlying purposes of the legislation. *Buckner,* 623 S.W.2d at 105 (adopting factors from *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).[5]

Under the *Cort* test as applied in subsequent decisions, courts first look at the language of the statute itself. *Ergon, Inc.,* 966 F.Supp. at 584 (citations omitted). "A court's most basic duty in construing a statute is 'to ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope.'" *Id.* (quoting *Tennessee v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993)). "Therefore, unless the legislative intent to create a private right of action 'can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* (quoting *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)).

The purpose of the statute appears to be to protect the integrity of the legal system. To that end, the class of persons which the statute intends to protect from being coerced are witnesses and/or prospective witnesses. In the instant action, Dr. Scott was the prospective witness who was subjected to the conduct. Plaintiffs, although possibly injured by Defendant Sigmon's conduct, are not the class intended to be protected by the statute. Furthermore, neither the statute itself nor the comments and notes either implicitly or explicitly appears to indicate any legislative intent to provide a private right of action.[6] The Court finds therefore

5. The *Cort* test actually contains four factors. The fourth factor for consideration—whether the cause of action is traditionally delegated to state law rather than federal law—does not apply to interpretation of state statutes. Therefore, the *Buckner* court declined to apply this factor to the interpretation of a Tennessee statute.

6. Plaintiffs rely on *Willard v. Golden Gallon–TN, LLC,* 2004 WL 1778476 (Tenn.Ct.App. 2004), as providing evidence that the statute

that the factors weigh in favor of Defendants' assertion that the criminal statute does not create a private right of action in Plaintiffs. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiffs' claim for coercion of a witness.

## E. *Vicarious Liability*

Defendants next assert that the claims against Defendants Storgion and SVMIC should be dismissed because they should not be held vicariously liable for Defendant Sigmon's conduct. In Tennessee, both the insurer and the insured may be held liable in certain instances for the acts or omissions of their attorney. *See Givens,* 75 S.W.3d at 395. Ordinarily, when an "insurer hires an attorney to defend an insured, the relationship of the insurer and its attorney is precisely that of principal to independent contractor." *Id.* at 393. An insurer and insured may be liable for the acts of the attorney if the acts or omissions were "directed, commanded, or knowingly authorized" by the insurer or the insured. *Id.* at 395, 397.

Defendants assert that neither Dr. Storgion nor SVMIC either directed, commanded or knowingly authorized Defendant Sigmon's actions. Defendant Storgion filed an affidavit in which she states that she did not direct Defendant Sigmon's actions in any way, "nor [did she] have the knowledge and expertise to do so even if [she had] the desire to do so." Defendant Sigmon also filed an affidavit in which she avers that neither Defendants Storgion or SVMIC controlled the details of Defendant Sigmon's strategy. Defendant Sigmon further states that neither SVMIC nor Dr. Storgion directed, ordered, or authorized her to contact the FDA or otherwise directed her investigation of Dr. Scott. James Howell, the Vice–President of Claims for SVMIC, filed an affidavit in which he asserts that no one at SVMIC instructed, directed, or controlled Defendant Sigmon's actions in defending Dr. Storgion.

Plaintiffs assert that SVMIC may be vicariously liable because James Trimbach, the claims attorney for SVMIC, who handled the file in the underlying action, was aware of Defendant Sigmon's conduct. Mr. Trimbach received an e-mail from Defendant Sigmon in which she informed him that she had contacted the FDA about Mr. Scott. Plaintiffs assert that SVMIC's inaction in light of this direct knowledge infers that SVMIC at least in part knowingly authorized Defendant Sigmon's actions. The Court finds that this is sufficient to create a genuine issue of material fact as to Defendant SVMIC. The Court therefore denies Defendants' motion for summary judgment as to the vicarious liability of Defendant SVMIC.

Plaintiffs have not established, however, that an issue of fact remains as to whether Dr. Storgion may be held vicariously liable for Defendant Sigmon's conduct. The record clearly indicates that Defendant Storgion did not authorize in any way Defendant Sigmon's conduct. Moreover, it is not clear that Defendant Storgion was even aware of Defendant Sigmon's conduct. Most importantly, however, Defendant Storgion is a doctor, who admittedly had no inkling that such con-

provides a private cause of action. In *Willard,* the court determined that the plaintiff, who was allegedly terminated because he left work to testify after receiving a subpoena, could maintain a retaliatory discharge action against the defendant. *Willard,* 2004 WL 1778476 at *5. The Court notes, however, that the *Willard* court did not hold that Tenn.Code Ann. § 39–16–507 provides a private cause of action. The action in *Willard* was for retaliatory discharge. Moreover, the plaintiff in *Willard* was the actual witness in the case underlying the retaliatory discharge action.

duct may be improper. Accordingly, the Court grants Defendants' motion for summary judgment as to the vicarious liability of Defendant Storgion.

F. *Award of Attorney's Fees*

Defendants assert that they are entitled to attorney's fees based on Plaintiffs' filing of the instant action. For the reasons stated herein, the Court denies Defendants' request for attorney's fees.

IV. *CONCLUSION*

For the reasons stated herein, the Court denies Defendants' motion for summary judgment as to Plaintiffs' claims for abuse of process, intentional interference with a business relationship, and inducement to breach a contract. The Court further denies Defendants' motion for summary judgment as to Plaintiffs' claims against Defendant SVMIC based on vicarious liability. Defendants' request for attorney's fees is likewise denied. The Court grants Defendants' motion for summary judgment as to Plaintiffs' claim for coercion of a witness and Plaintiffs' claims against Defendant Storgion based on vicarious liability.