IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2006 Session

## MICHAEL B. TODD v. DEAN JACKSON, ET AL.

**Direct Appeal from the Circuit Court for Henderson County**
**No. 03157-1     Roy B. Morgan, Jr., Judge**

_____

**No. W2005-01526-COA-R3-CV - Filed July 6, 2006**

_____

Michael B. Todd ("Plaintiff") filed a retaliatory discharge claim after being terminated from his position as a water plant operator for the City of Lexington, Tennessee. At trial, the court dismissed his retaliatory discharge claim after finding that Plaintiff failed to make out a prima facie case. Plaintiff appeals raising the issues of whether the trial court erred in dismissing his retaliatory discharge claim and whether the trial judge erred in failing to recuse himself from this case. For the reasons set forth below, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Michael B. Todd, *Pro Se*.

Dale Conder, Jr., Jackson, Tennessee, for the appellees, Dean Jackson, Phil Belew, Mark Dickson, Bennie Scott, Mayor of the City of Lexington, and City of Lexington.

**OPINION**

*Factual Background and Procedural History*

On October 11, 2002, Michael B. Todd ("Plaintiff") was hired by the City of Lexington, Tennessee, as a water plant operator. Plaintiff was an at-will employee and was required to complete a ninety-day probationary period. As an operator for the water treatment plant, Plaintiff's job included, among other things, backwashing the filters when the gauges indicated a certain "loss of head." However, besides reading the gauges, operators must also consider other factors such as water demand on their shift as compared to the following shift and, thus, must decide if it would be better to backwash the filters early rather than trying to backwash during a peak demand time. In this case, Plaintiff worked the 6:00 p.m. to 6:00 a.m. shift which ran from

January 1, 2003, to the morning of January 2, 2003. When the operators arrived on the morning of January 2, they discovered that Plaintiff had not backwashed any of the filters. Phil Belew ("Defendant Belew"), assistant manager of the water treatment plant, confronted Plaintiff about his failure to backwash, and Plaintiff later claimed that he was assaulted by Defendant Belew during this confrontation.

Plaintiff was subsequently terminated by Dean Jackson ("Defendant Jackson"), manager of the water system for the City of Lexington, on January 3, 2003, prior to the completion of his probationary period. On December 31, 2003, Plaintiff filed suit against Defendant Jackson, Defendant Belew, Mark Dickson ("Defendant Dickson"), Bennie Scott ("Defendant Scott"), and the City of Lexington, Tennessee (all parties cumulatively referred to at times as "the Defendants"). In his complaint, Plaintiff asserted that (1) Defendant Belew and the City of Lexington were liable for assault, (2) that Defendants Jackson, Belew, and Dickson and the City of Lexington were liable for criminal conspiracy to commit assault against Plaintiff, (3) that Defendants Scott, Jackson, and the City of Lexington were liable for wrongful discharge and intentional infliction of emotional distress against Plaintiff, (4) that Defendants Belew, Jackson, and the City of Lexington were liable for intentional infliction of emotional distress by attempting to compel Plaintiff to violate federal and state law, and (5) that Defendant Jackson and the City of Lexington were liable for breach of contact for terminating Plaintiff's employment in bad faith. On September 24, 2004, the trial court partially granted a motion for summary judgment filed by the Defendants, thus granting the Defendants a judgment as a matter of law on Plaintiff's claims of conspiracy to commit assault, breach of contract, and intentional infliction of emotional distress.

Trial on Plaintiff's remaining issues was held on April 28, 2005. At trial, Plaintiff pursued his retaliatory discharge claim under both the whistle blower statute as well as the Public Employee Political Freedom Act which provides that it is unlawful for an employer to discipline, threaten to discipline, or otherwise discriminate against an employee because such employee exercised their right to communicate with an elected official. He also pursued his assault claim against Defendant Belew and the City of Lexington. However, after Plaintiff presented his proof, the trial court granted the Defendants' motion for involuntary dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure. In dismissing Plaintiff's claim, the trial court noted that Plaintiff had failed to prove that he had been assaulted by Defendant Belew, and had further failed to prove that he had been fired for reporting or refusing to participate in illegal activity, or for speaking with an elected official. The trial court further found that, even had Plaintiff carried the burden of proof for wrongful discharge, he had failed to put on any proof regarding damages. Plaintiff appeals.

### *Issues Presented*

We find the issues in this appeal to be as follows: 1) whether the trial court erred in finding that Plaintiff was not wrongfully discharged for communicating with an elected official,

and 2) whether the trial judge erred in failing to recuse himself from Plaintiff's case. For the reasons stated below, we affirm.

### Standard of Review

This Court has stated the standard of review for a motion to dismiss as follows:

> When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after presentation of all of the evidence. *See* Tenn. R. Civ. P. 41.02(2). If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if, on the facts found and the applicable law, the plaintiff has shown no right to relief. *See City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is in accordance with Tenn. R. App. P. 13(d). *Atkins*, 823 S.W.2d at 552. As such, the factual findings of a trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

*Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. May 10, 2004).

### Analysis

#### Wrongful Termination for Communicating with an Elected Official

Plaintiff asserts that the trial court erred in dismissing his wrongful discharge claim asserted under section 8-50-602(a) of the Public Employee Political Freedom Act. Specifically, Plaintiff argues that he proved by a preponderance at trial that he was discharged for speaking with an elected official. For the reasons set forth below, we disagree.

"In Tennessee, the general rule is that an at-will employee may be fired for good cause, bad cause or no cause." *Willard v. Golden Gallon-TN, LLC*., 154 S.W.3d 571, 575 (Tenn. Ct. App. 2004) (citing *Payne v. W. & Atl. R.R. Co.*, 81 Tenn. 507, 519-520 (1884), *overruled on other grounds by Hutton v. Watters*, 179 S.W.134, 138 (Tenn. 1915); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994)). However, "[b]oth statutory and case law have placed restrictions upon an employer's freedom to discharge an employee, usually for reasons of clear

public policy." *Id.* (citing *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552, 555 (Tenn. 1988). Such a restriction is set forth under section 8-50-602(a), which provides that "[i]t is unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official." Tenn. Code Ann. § 8-50-602(a) (2002). In interpreting this statute, this Court has noted that "[o]bviously, the word 'because' . . . requires that the discriminatory actions of the public employer must have resulted from the employee's communication with an elected official." *Pewitt v. Buford*, No. 01A01-9501-CV-00025, 1995 WL 614327, at *5 (Tenn. Ct. App. Oct. 20, 1995).

At trial, the only evidence set forth by Plaintiff in support of his claim under section 8-50-602 was his own testimony, which was as follows:

> I contacted [Defendant] Jackson, asked if I could come to his office. He said I could. So I went to his office that morning around 7:00 a.m. Went to his office that morning around 7:00 a.m. and I had a conversation with [Defendant] Jackson. I told him that [Defendant] Belew–I don't think I used the word assault, but I said, you know, he had had threatening actions toward me. You know, he was–you know, made me very upset. And I did tell him, you know–you know, I do not have to deal with this. You know, that I expect him to do something about this matter. You know, you've got to have safety at your workplace.
>
> And me and [Defendant] Jackson had a short conversation. In this conversation, I did tell [Defendant] Jackson that I was planning on talking to the mayor about this matter. And [Defendant] Jackson said, "Are you threatening me with the mayor?" And I said, "No, I'm not." And so that was pretty much the end of that conversation.
>
> Then when I left [Defendant] Jackson's office, I–at some point that morning, I think after I had left [Defendant] Jackson's office, I talked with the mayor. Yeah, in fact, I did. I talked with him after I left [Defendant] Jackson's office and–on the telephone, called his house, and I told him what had happened. You know, I told him–He said he would check into the matter. And I think he–he did have [Defendant] Jackson go check into the matter. [Defendant] Jackson claimed to have done an investigation sometime later.
>
> Then–Lets see. That was the morning of January 2nd, and that was a Thursday morning. And I was not scheduled to go back to work till that Friday night, the night of January the 3rd.
>
> But I would go to the office on January the 3rd to pick up my paycheck for the week. We got paid every Friday. I think that's right. And so when I went to pick up my paycheck on that Friday morning or so, [Defendant] Jackson, he called me into his office. He told me that things were just not working out and that he was going to let me go.

Defendant Scott, Mayor of the City of Lexington, testified that Plaintiff was an at-will employee subject to a ninety-day probationary period to ensure capability of performing job duties. The record shows that Mayor Scott never testified that he informed Defendant Jackson about Plaintiff's contacting him, but did state that he did not believe Plaintiff was fired for speaking with an elected official. Plaintiff never presented any testimony from Defendant Jackson regarding either Defendant Jackson's knowledge regarding Plaintiff's conversation with Mayor Scott or the reasons Defendant Jackson terminated Plaintiff's employment. However, in relation to potential reasons for Plaintiff's termination, Plaintiff himself testified that one reason he believed he was fired was due to his last name. Furthermore, Jimmy Kee, former Plant Manager of the Lexington Water System, testified that Plaintiff had trouble making decisions while on the job. Such testimony was corroborated by Mark Dickenson, Plaintiff's former co-worker at the water treatment plant, who stated that Plaintiff had problems complying with his job duties.

In dismissing Plaintiff's wrongful discharge claim under section 8-50-602(a), the trial court found that

> Plaintiff failed to prove he was discharged because he communicated with Mayor Scott. Furthermore, Plaintiff offered no proof that [Defendant] Jackson had knowledge Plaintiff actually talked with Mayor Scott. Plaintiff offered no testimony or any other evidence establishing his termination was in any way related to his communication with Mayor Scott.

After a review of the record, we find that the evidence fails to preponderate against the finding of the trial court that Plaintiff was not terminated for speaking with an elected official. As a result, we find that the trial court did not err in dismissing Plaintiff's cause of action.

### Recusal of Trial Judge

In his brief, Plaintiff asserts that the trial judge should have recused himself from the case at bar because he had previously accepted a campaign contribution from a former member of the law firm representing the Defendants in this case. We disagree.

Tennessee courts have long recognized that all parties in a suit "have a right to have their cases heard by fair and impartial judges." *Eldridge v. Eldridge*, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Mar. 10, 2003) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). As set forth by this Court in *Eldridge*,

> Initially, the judge has the duty to determine whether recusal is warranted in a particular case. *Kinard*, 986 S.W.2d at 228. These decisions are discretionary, unless otherwise mandated by the Tennessee Constitution or by statute. *Id. See* Tenn. Const. Art 6 § 11; Tenn. Code Ann. § 17-2-101 (1994). A judge must be objective when making his or her determination. *Kinard*, 986

S.W.2d at 228. Thus, when parties challenge a judge's impartiality, they "must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned. *Davis v. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999).
. . . .
Parties may lose the right to challenge a judge's impartiality if they do not file recusal motions soon after the facts forming the basis of the motion become known. *Id.* The frequently cited rule that "a party must complain and seek relief immediately after the occurrence of a prejudicial event and may not silently preserve the event as an 'ace in the hole' to be used in the event of an adverse decision," applies in cases where a party challenges a judge's impartiality. *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988); *see also Davis*, 23 S.W.3d at 313; *Kinard*, 986 S.W.2d at 228. Accordingly, the failure of a party to seek the recusal of a judge in a timely manner results in a waiver of the issue. *Davis*, 23 S.W.3d at 313.

*Eldridge*, 137 S.W.3d at 7-8.

In this case, we note that Plaintiff did not raise the issue of recusal at trial. Despite this, Plaintiff argues that he should nonetheless be allowed to raise this issue for the first time on appeal because Plaintiff did not learn of the alleged conflict of interest until more than thirty days after the trial court's judgment. Although Plaintiff alleges that he failed to learn of any potential conflict until more than thirty days after the trial court rendered final judgment, the record shows that he failed to file any motions for post-judgment relief pursuant to Rule 60 of the Tennessee Rules of Civil Procedure in order to try and bring this issue before the trial court. Accordingly, we are inclined to hold that Plaintiff has waived this issue. However, in order to foster and preserve confidence in judicial neutrality, we will nonetheless address the merits of Plaintiff's claim.

As previously noted, a party challenging the impartiality of a judge "must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Davis*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). As already stated, Plaintiff argues that the trial judge should have recused himself due to the acceptance by the trial judge of a campaign contribution from a former partner with the Defendants' law firm. Specifically, Plaintiff, in his brief, asserts that he is entitled to relief because the "Supreme Court Rules Commentary [to Rule 10, Canon 5(C)(2)(b) of the Tennessee Supreme Court Rules] state, '[t]hough not prohibited, campaign contributions of which a judge has knowledge, made by lawyers or others who appear before the judge, may be relevant to disqualification under Section 3E.'" We disagree.

The basis of Plaintiff's argument stems from a campaign contribution occurring between July 1998 and September 1998 by an attorney not appearing on behalf of any party to this case. Furthermore, the Plaintiff has failed to present, either in the record or in his brief, evidence

showing that the trial judge in this case had any knowledge of the sources of prior campaign contributions.  Nor has Plaintiff presented any evidence showing that the trial judge gave preferential treatment to the Defendants in this case, or to parties represented by the Defendants' law firm in any other case.  In light of these facts, we cannot say that a reasonable person would be prompted to question the trial judge's impartiality in this matter.  We accordingly find Plaintiff's issue regarding recusal to be without merit.

### *Conclusion*

Based on the foregoing, we affirm the trial court.  Costs of this appeal are awarded against the Appellant, Michael B. Todd, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE