# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 8, 2023

## SUSAN DAVIS MALONE v. THOMAS FRANKLIN MALONE, JR.

**Appeal from the Probate Court for Shelby County**
No. PR-25355     Joe Townsend, Judge

No. W2023-00843-COA-T10B-CV

FILED

DEC 0 6 2023

Clerk of the Appellate Courts
Rec'd By _____

This is an interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, filed by the appellants seeking to recuse the trial judge, Judge Joe Townsend (the "trial judge") in the underlying post-divorce contempt action. Having reviewed the petition for recusal appeal filed by the appellants and the answer thereto, and finding that the appellants have failed to demonstrate that a person of ordinary prudence in Judge Townsend's position, possessing the same knowledge as Judge Townsend, would find a reasonable basis to question Judge Townsend's impartiality, we affirm the trial judge's denial of the recusal petition.

### Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;
### Judgment of the Probate Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., joined. KENNY ARMSTRONG, J., filed a dissenting opinion.

Edward T. Autry, Memphis, Tennessee, for the appellants, Hannah Elizabeth Bleavins, Edward Thomas Autry, and Susan Davis Malone.

Leslie M. Gattas and Lynn Wilhelm Thompson, Memphis, Tennessee, for the appellee, Stephanie Cole.

Brian L. Yoakum and Mitchell D. Moskovitz, Memphis, Tennessee, for the appellee, Thomas Franklin Malone, Jr.

## OPINION

### I. Factual and Procedural Background

Edward T. Autry and Hannah Elizabeth Bleavins (collectively, "Attorneys") are established estate planning and probate attorneys practicing law at Williams McDaniel, PLLC ("Williams McDaniel"). Beginning in November 2014, Susan Davis Malone retained Mr. Autry and Williams McDaniel to draft estate planning documents for her, to include a Last Will and Testament, Durable Powers of Attorney regarding both health care and financial matters, and a living will. Ms. Malone continued to retain Mr. Autry and Williams McDaniel for estate planning matters several times throughout the years. In April 2018, Ms. Malone also hired Mr. Autry and Williams McDaniel to file a post-divorce criminal contempt action in the Shelby County Circuit Court ("circuit court") against her ex-husband, Thomas ("Tommy") Franklin Malone, Jr., concerning approximately $6,000,000 in unpaid alimony.

In September 2018, Ms. Malone executed updated estate planning documents that named Mr. Autry and Ms. Bleavins as her attorneys-in-fact for both financial affairs and health care ("2018 DPOAs"). The health care Durable Power of Attorney appointed her attorneys-in-fact as her guardians or conservators in the event such appointment became necessary. Unfortunately, Ms. Malone suffered a catastrophic health event in November 2021 that allegedly left her disabled and/or incompetent, and Attorneys exercised their authority under the 2018 DPOAs to obtain health care for Ms. Malone.

On November 16, 2022, Ms. Malone executed updated durable power of attorney documents ("2022 DPOAs") revoking the previous documents and appointing her daughter, Lisa Malone Jackson, as her power of attorney for health care decisions and for financial matters. The next day, attorney William L. Bomar sent a letter to Attorneys informing them that he had been retained to represent Ms. Malone and notifying them of the updated estate documents. Attorneys also received a second letter on the same day from Ms. Jackson's attorney, David Wade, who practices law at Martin, Tate, Marrow & Marston, PC, instructing them that they should not contact either Ms. Jackson, who was being represented by Mr. Wade and another attorney in the firm, or Ms. Malone, who was being represented by Mr. Bomar.

Contentious litigation ensued in the Shelby County Probate Court ("trial court"), wherein Attorneys filed a petition seeking appointment as the conservators of Ms. Malone's person and property. In the emergency conservatorship action, the trial court granted an *ex parte* order on the same day, appointing Attorneys as emergency conservators of Ms. Malone's person and property upon finding that substantial harm would occur to Ms. Malone before a hearing could be held. The trial court's November 22, 2022 order directed that the 2022 DPOAs, as well as the revocation of the 2018 DPOAs, "be rendered immediately void" in order to avoid confusion. The Trial Court ordered that a hearing be

- 2 -

scheduled and appointed attorneys Laura Mason and Paul Royal as guardian *ad litem* ("GAL") and attorney *ad litem* for Ms. Malone, respectively.

During these emergency conservatorship proceedings, Ms. Jackson filed a complaint for injunctive relief on behalf of Ms. Malone and a petition to terminate or modify the trial court's November 22, 2022 order. On January 6, 2023, the trial court, without holding an evidentiary hearing, entered an order implementing a process for terminating the emergency conservatorship to comply with the time restraints established in Tennessee Code Annotated § 34-1-132.[1] In this order, the trial court stated that although it had attempted to set the matter for a hearing during the first two weeks of December, the parties could not come to an agreement on a date before the holidays. As such, the trial court concluded that it would not be able to complete a hearing on the petition for an emergency conservatorship and found that the following was in the best interest of Ms. Malone:

> The following actions appear to be in the best interest of [Ms. Malone] given the sudden change in [Ms. Malone's] attorneys and Attorney in Fact without the Court's supervision and the need to conclude the emergency conservatorship:
>
> a.    Remove Autry & Bleavins as emergency conservators;
>
> b.    Clarify that Autry & Bleavins are [Ms. Malone's] attorneys;
>
> c.    Validate the September 18, 2018 Financial Power of Attorney and Medical Power of Attorney with Autry & Bleavins as Attorney in Fact and for [Ms. Malone].

---

[1] Tennessee Code Annotated § 34-1-132(a) (2021) provides as follows in pertinent part:

> If the court finds that compliance with the procedures of this title will likely result in substantial harm to the respondent's health, safety, or welfare, and that no other person, including an agent acting under the Health Care Decision Act, compiled in title 68, chapter 11, part 18, or a person acting under the Durable Powers of Attorney for Healthcare Act, compiled in chapter 6, part 2 of this title or a living will pursuant to title 32, chapter 11, appears to have authority to act, willingness to act, and is acting in the best interests of the respondent in the circumstances, then the court, on petition by a person interested in the respondent's welfare, may appoint an emergency guardian or conservator whose authority may not exceed sixty (60) days and who may exercise only the powers specified in the order. Immediately upon receipt of the petition for an emergency guardianship or conservatorship, the court shall appoint an attorney ad litem to represent the respondent in the proceeding. Except as otherwise provided in subsection (b), reasonable notice of the time and place of a hearing on the petition shall be given to the respondent and any other person as the court directs.

d. Remove [Ms. Malone's] authority to revoke the September 18, 2018 Powers of Attorney without the court's prior approval.

e. Clarify that the November 16 Documents [Ms. Malone] executed are void and do not affect the validity of the September 18, 2018 Financial Power of Attorney and Medical Power of Attorney with Autry & Bleavins as Attorney in Fact and for [Ms. Malone].

f. Provide instruction for [Ms.] Jackson that if she desires to change [Ms. Malone's] attorneys or Attorney in Fact she should file a non-emergency petition for conservatorship of Susan Davis Malone under T.C.A. § 34-3-104, under a new docket number as a related case so that it will be assign[ed] to Division II.

g. Direct that discovery under the Emergency Petition cease;

h. Assure the parties that the emergency Petition is being closed without prejudice.

i. Direct the attorneys to file their Petition for fees to be heard on Tuesday, January 10, 2023 at 1:00 p.m.

j. Note that [Ms.] Jackson will be responsible for the fees of Bomar, Wade and Myatt;

k. Note that [Ms. Malone] will be responsible for the fees of Mason, Royal, Autry & Bleavins.

l. Set a goal to close this case after it has been confirmed that awarded attorney fees have been paid.

In the January 6, 2023 order, the trial court also discharged Mr. Royal as attorney *ad litem* and stated that the order was not a final judgment. Ms. Jackson filed motions seeking to alter the trial court's orders, which the trial court denied.

The trial court subsequently entered an order on February 21, 2023, closing the emergency conservatorship. On March 20, 2023, Ms. Jackson filed a notice of appeal to this Court with regard to the February 21, 2023 order in the emergency conservatorship action under docket number PL-24346.[2] Although the trial court initially stated that the February 21, 2023 "Order Directing Payment of the Attorney Fees of William L. Bomar

---

[2] The appeal of the emergency conservatorship action, No. W2023-00409-COA-R3-CV, has been stayed in this Court pending resolution of this appeal.

- 4 -

and Closing Emergency Conservatorship" was a final order, the court entered an "Amended Order Directing Payment of the Attorney Fees of William L. Bomar and Closing Emergency Conservatorship" on April 10, 2023. In the amended order, the court stated that there was no final judgment pursuant to Tennessee Rule of Civil Procedure 54.02 and that the parties would continue to litigate their claims for relief under docket number PR-24906, which involved a non-emergency petition for conservatorship filed by Attorneys. On February 24, 2023, the trial court and the circuit court jointly entered a *sua sponte* order transferring jurisdiction of the post-divorce contempt action originally filed in the circuit court to the trial court without conducting a hearing. Prior to the trial court's resolution of the emergency conservatorship action, Attorneys filed a non-emergency petition on January 25, 2023, seeking permanent conservatorship of Ms. Malone under a separate docket number PR-24906. Ms. Jackson and other family members subsequently filed a counter-petition for appointment of a permanent conservator, wherein Ms. Jackson sought the appointment of Ms. Jackson and Mr. Royal as co-conservators on behalf of Ms. Malone's person and further sought appointment of N. Gordon Thompson and TD Capital Management, LLC, as conservators of Ms. Malone's estate.[3]

The trial court conducted a status conference on March 10, 2023, respecting the permanent conservatorship action, during which the trial judge stated that he had received critical feedback concerning his practice of ruling without first conducting hearings and that "the feedback was well-taken." The trial judge assured the parties that he would "do [his] best to have hearings before the Court issues orders." No evidentiary hearing was conducted during the status conference, and the trial judge noted that he was not making rulings or findings that day. The trial judge further stated that the trial court (probate court) had assumed jurisdiction of the post-divorce contempt action and that it appeared to him that "Tommy Malone, who is in an adversary lawsuit with Susan Malone, had his counsel initiate the involvement of Mr. Wade's law firm in this matter." Mr. Wade responded that he had "no contractual relation with Tommy Malone" and that Mr. Malone had not "paid [him] a dime."

During this status conference, the trial judge observed that the lawsuit against Mr. Malone was "basically[] estate planning" and that Ms. Malone's beneficiaries' interests should be represented. The trial judge at that time asked Mr. Autry a question regarding the contents of Ms. Malone's will and identified Ms. Malone's grandchildren as her presumptive beneficiaries. When Mr. Autry responded that he could not ethically reveal the contents of his client's will, the trial judge directed Mr. Autry to provide the original will to Ms. Mason, the GAL, for safekeeping. The trial judge appointed Janelle Eskridge as attorney *ad litem* for Ms. Malone.

---

[3] The appellees, Jeffrey Wells Jackson, Jr.; Elisabeth Davis Jackson; John Parker Jackson; Valerie Harwood; Alicia Kelley; and Teresa Rando., were also included as joint petitioners in this pleading.

On March 31, 2023, Ms. Jackson filed an amended petition, seeking an expedited hearing. Additionally, Ms. Jackson informed the trial court that she had contacted attorney Leslie Gattas to represent Ms. Malone in the post-divorce action against Mr. Malone pending in the circuit court. On April 5, 2023, the GAL filed a report in this action.

On April 9, 2023, Attorneys filed a motion seeking a stay of the proceedings pending the appeal of the emergency conservatorship action; a motion for judgment on the pleadings pursuant to Tennessee Rule of Civil Procedure 12.03; and a motion to disqualify Mr. Wade and his law firm of Martin, Tate, Morrow & Marston, PC, as counsel in this matter due to a conflict of interest based on the law firm's relationship with Tommy Malone. Each of these motions remain pending before the trial court.

On April 11, 2023, the trial court conducted another status conference regarding the permanent conservatorship action and the post-divorce contempt proceeding. During this hearing, the trial judge indicated that the parties and counsel were present because the trial judge planned to enter a court order and wanted to do so with counsel and the parties in attendance. No evidentiary hearing was conducted during this status conference. The trial judge found that Ms. Malone possessed the resources to retain separate counsel to represent her in the post-divorce contempt matter. The trial judge further found that Mr. Autry had represented Ms. Malone well for several years but that he was "wearing several hats as it relates to trying to make sure that Ms. Malone's interests are taken care of legally[.]" As such, the trial judge noted that he believed it to be in Ms. Malone's best interest to "separate out" counsel in these matters.

The trial court "direct[ed] and/or order[ed]" that Mr. Autry retain the services of Ms. Gattas to represent Ms. Malone in the post-divorce contempt action and that he "have her substitute in to replace Mr. Autry" in that case. The trial court further appointed two attorneys from the same law firm to serve as mediators in the post-divorce action. Moreover, the trial judge articulated that Mr. Autry was "not removed as Ms. Malone's counsel, but as far as the active case to see if it can get settled and/or tried," he was having Ms. Gattas "substitute in." Instead of having Mr. Autry present at the mediation, the trial judge stated that the GAL would be present to represent Ms. Malone's interest. The trial judge further directed Mr. Autry, as Ms. Malone's attorney-in-fact, to retain attorney Lynn Thompson to represent Ms. Malone during the pending Tennessee Rule of Appellate Procedure Rule 3 appeal of the emergency conservatorship action.

Following the April 11, 2023 status conference, the GAL filed a supplemental report in the conservatorship action on April 18, 2023, recommending the appointment of a neutral third-party fiduciary to serve as interim conservator for Ms. Malone. The GAL's report further indicated that Ms. Malone's will provided for the appointment of Ms. Bleavins to serve as the trustee overseeing Ms. Malone's grandchildren's testamentary trusts, which she maintained would create a conflict of interest because Ms. Bleavins would

- 6 -

then have a "monetary interest in ensuring assets come into the control of [Ms. Malone's] Estate and Trust at her death."

The trial court entered an order on April 26, 2023, memorializing the changes in representation directed by the court during the April 11, 2023 status conference hearing. Additionally, the trial court ordered that Stephanie Cole be appointed to serve as interim conservator with limited authority to serve as the client to Ms. Gattas in the post-divorce contempt case based on the recommendation from the GAL. In the April 26, 2023 order, the trial court directed that Mr. Autry and Williams McDaniel be removed as counsel of record for Ms. Malone in the post-divorce contempt action.

On May 3, 2023, the trial court conducted a separate status conference with only the parties and counsel in the post-divorce contempt action. On May 4, 2023, the court held a separate status hearing relative to the conservatorship action. During the May 4 hearing, the trial judge questioned Ms. Bleavins regarding the contents of Ms. Malone's will, to which Ms. Bleavins objected on the basis of attorney-client privilege. The trial judge reasoned that he had previously ordered the document to be turned over to the GAL and that privilege had been waived "because by court order, the Court has basically made it part of the record by giving it to the guardian ad litem." The trial court added that it was admitting Ms. Malone's will "into evidence for the purposes of making [a] finding of fact" that a financial conflict of interest exists.

During the May 4, 2023 status conference in the conservatorship action, the trial judge informed the parties that Ms. Gattas had advised the court during the previous day's status conference that she had sent a copy of a retainer agreement to Mr. Autry but had heard nothing from him. The trial judge further informed the parties that during the May 3, 2023 status conference, he had ordered that Ms. Cole, as interim conservator, be permitted to retain Ms. Gattas in the post-divorce contempt action and that Ms. Cole would be the "sole client" of Ms. Gattas.

Upon questioning from the trial judge during the May 4, 2023 status conference, Ms. Thompson informed the court that she had spoken to Mr. Autry briefly with respect to representing Ms. Malone for the appeal regarding the emergency conservatorship action. Ms. Thompson related that Mr. Autry had not yet retained her but that he had told her he had no objection to Ms. Thompson serving in that capacity. The trial judge further expanded the interim conservator position to allow Ms. Cole to retain Ms. Thompson in the pending appeal on the emergency conservatorship action and ordered that Ms. Cole would be the "sole client" of Ms. Thompson.

Due to Mr. Autry's unavailability, another attorney, A. Stephen McDaniel, also of Williams McDaniel, attended the May 4, 2023 hearing in place of Mr. Autry. In response to the oral rulings of the trial court, Mr. McDaniel stated as follows:

- 7 -

Your Honor, please with all respect, I know a little about this case. I've known Susan Malone for five years. What the Court is doing is making orders where we've had no opportunity to address the Court. We have no opportunity to present evidence. This is simply -- the Court is, in essence, destroying a contractual relationship and a personal relationship that's existed between our firm and our client.

Mr. McDaniel requested understanding by the court because the April 26, 2023 order directing Mr. Autry and Ms. Bleavins to retain Ms. Gattas and Ms. Thomson was entered only ten days prior. In response, the trial judge instructed:

As it relates to the post-divorce action PR-25355 and to the emergency appeal, the Court had entered an order directing Mr. Autry and Ms. Bleavins to retain two attorneys for these related matters. One was Ms. Gattas and one was Ms. Lynn Thompson.

I'll be entering an order directing that on June the 1st at eleven o'clock, 2023, Ed Autry and Hannah Bleavins are to personally appear before this Court to show cause if and why they are not to be held in contempt of court for failing to obey the Court's order of April 26th to retain Ms. Gattas and Ms. Thompson.

The record reflects that summons were issued requiring Attorneys to appear before the court on June 1, 2023.

The trial court entered an order on May 4, 2023, memorializing the status conference hearing held the same day. The trial court directed the May 4, 2023 order to be entered in both the conservatorship action and the post-divorce contempt action.[4] On May 8, 2023, Attorneys filed a motion to alter or amend the trial court's order resulting from the April 11, 2023 status conference and requested a date for hearing. They also requested dates for hearing on their previously filed motion for judgment on the pleadings pursuant to Tennessee Rule of Civil Procedure 12.03; motion to disqualify Mr. Wade and his law firm of Martin, Tate, Morrow & Marston, PC, as counsel in this matter; and motion to stay the proceedings pending resolution of the Tennessee Rule of Appellate Procedure 3 appeal initiated by Ms. Jackson in the emergency conservatorship case.

The trial court subsequently entered an addendum to the May 4, 2023 order providing:

---

[4] Attorneys filed applications for extraordinary appeals with this Court concerning both the conservatorship action and the post-divorce action. Those applications remain pending before this Court until the conclusion of this recusal appeal.

- 8 -

Because Ms. Bleavins is married to Attorney Edward Autry, the Estate Planning Documents also create a financial benefit for him. The Court finds that the long-term fiduciary appointment Ms. Bleavins established for herself in Ms. Malone's Estate Planning Document creates the appearance of a conflict between Mr. Autry/Ms. Bleavins' own financial interests and their obligations to Ms. Malone in *Malone v. Malone*.

On May 16, 2023, the trial judge contacted Holly Brewer Palmer, an associate with Williams McDaniel, via the telephone to inform her that the law firm of Evans Petree, PC, was seeking to hire an associate attorney to work on probate matters.[5]

On May 17, 2023, the trial court conducted another status conference concerning the conservatorship action, during which the court caused Mr. Autry to be served with process on the trial court's previous contempt allegations while he was present in the courtroom. During the conference, the trial judge stated that he was not in a position to hear the motions without hearing evidence and suggested that everything be heard at one time. The trial court scheduled a hearing date for July 31, 2023, to begin hearing evidence in the conservatorship action. During the status conference, the trial court further stated that due to the "adversariness of the parties to one another," the trial court was appointing an unknown interim conservator and requiring Attorneys to turn over control of Ms. Malone's funds to the interim conservator. The trial judge noted that he was "taking this action in the best interest of Susan Davis Malone and exercising the power that the legislature has provided to the Court under Section 121."[6]

Attorneys filed a motion for recusal on May 18, 2023, seeking the recusal of the trial judge in the conservatorship action, the post-divorce contempt action, and the

---

[5] An attorney for Evans Petree, PC, represents Mr. Malone in the post-divorce proceedings.

[6] Tennessee Code Annotated § 34-1-121 (Supp. 2023) states as follows in pertinent part:

(a) The court has broad discretion to require additional actions not specified in this chapter, and chapters 2 and 3 of this title as the court deems in the best interests of the minor or person with a disability and the property of the minor or the person with a disability. The court also has discretion to waive requirements specified in this chapter, and chapters 2 and 3 of this title if the court finds it is in the best interests of the minor or person with a disability to waive such requirements, particularly in those instances where strict compliance would be too costly or place an undue burden on the fiduciary or the minor or the person with a disability.

(b) In any action, claim, or suit in which a person with a disability is a party or in any case of personal injury to a person with a disability caused by the alleged wrongful act of another, the court in which the action, claim, or suit is pending, or the court supervising the fiduciary relationship if a fiduciary has been appointed, has the power to approve and confirm a compromise of the matters in controversy on behalf of the person with a disability. If the court deems the compromise to be in the best interest of the person with a disability, any order or decree approving and confirming the compromise shall be binding on the person with a disability.

contempt action initiated by the trial judge against Attorneys, as well as all matters involving the law firm of Williams McDaniel. The trial judge denied the motion for recusal without conducting a hearing. In his order denying recusal, the trial judge stated as follows:

A. Phone call to Ms. Palmer.

The Court's phone call to Ms. Palmer is not grounds for recusal. [Attorneys'] argument about that phone call is based on supposition, not facts. "Rule 10B requires parties to present specific facts that support their motion for recusal." *Boren v. Hill Boren*, 557 S.W.3d 542, 547 (Tenn. Ct. App. 2017). The facts are that the Court told a member of the bar of a job opening. The supposition [Attorneys] draw from those facts is not grounds for recusal.

Throughout these proceedings the Court has stated multiple times in open court, on the record, that he believes that [Attorneys] (and their adversaries) are "excellent lawyers." Nothing in the Palmer Affidavit ("Affidavit") provides any evidence that the Court made any negative statement about [Attorneys] or their firm. The Affidavit presents no fact that supports recusal. Since it has been filed, however, the Court must address the statements in the Affidavit. The facts concerning this are set forth hereinabove.

At or about the time of the Palmer call, the Court had let another lawyer also know of the job opening with the same statements: there is a job opening, I am not recommending you, I have not given your name to the hiring firm, I am not asking you to apply, but here is the information.

[Attorneys] infer from the call that the Court is somehow biased against their firm or somehow biased in favor of another firm. The Court made no statement in that call negative about [Attorneys'] firm or positive, by comparison, with any other firm. No fact about that call shows bias against the firm. No fact about that call relates to the case now before the Court or, in fact, to any case before this Court.

"The code of judicial conduct does not require judges to remain isolated from other members of the bar and from the community." *Boren v. Hill Boren*, 557 S.W.3d 542 (Tenn. Ct. App. 2017). "A judge is neither required nor encouraged to forego social interaction and involvement upon assuming his or her office." *Hadler v. Union Bank & Trust Co.*, 765 F. Supp 976, 977 (S.D. Ind. 1991).

The Court is to evaluate the Palmer call on an objective basis: would a reasonable person, knowing the facts known to the Court, find a reasonable basis for questioning the Court's impartiality. Under that standard, the record before this Court and the facts known to the Court do not demonstrate bias or prejudice or the appearance of bias or prejudice.

Quite simply, that call took place the day before the Court issued a ruling verbally that affects [Attorneys'] participation as lawyers and client (as Attorneys in Fact) in a case with six million dollars at issue that they have on a contingency fee. The phone call does not show that the Court has any bias or prejudice against [Attorneys'] firm. The phone call is simply something [Attorneys] are using to try to remove the judge whose finding of a conflict is interfering with [Attorneys'] lucrative fee agreement with a disabled person.

B.    Adverse Rulings.

1.    [Attorneys'] complaints about certain rulings come too late to be considered as a basis for recusal.

A party seeking recusal must act promptly. As the Court of Appeals has stated:

> Rule 10B, section 1.01 provides that a party seeking disqualification of a judge must do so by filing a written motion "promptly after the party learns or reasonably should have learned of the facts establishing the basis for recusal." As this Court has previously explained:
>
>> A party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order "to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable." Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.

- 11 -

*Simonetti v. McCormick*, 2023 WL 1978257, at *5 (Tenn. Ct. App. Feb. 14, 2023), quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). [Attorneys'] complaints about the following rulings are neither prompt nor timely:

From November 22, 2022 forward, [Attorneys] were content with this Court's rulings. A list of those rulings is set forth hereinabove. The Motion to Recuse complains of actions the Court took on January 10, 2023, March 10, 2023, April 11, 2023, and April 26, May 4 and May 6, 2023.

If the Court's actions in January, March, April and early May were any basis for recusal, [Attorneys] should have brought those matters to the Court's attention. They did not. When a court acts with bias or prejudice, a party must raise the recusal issue promptly. A party

cannot know of [allegedly] improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome.

*Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009); *Boren v. Hill Boren*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017). The Court ruled favorably to [Attorneys] when it ruled that they could serve as [Ms. Malone's] Attorneys-in-Fact. It was not until the Court announced on May 17, 2023 that it intended to remove [Attorneys] as counsel for [Ms. Malone] in the six million dollar divorce matter that [Attorneys] decided the Court has an unacceptable bias or prejudice against them. [Attorneys] have failed to seek recusal in a timely way.

2.    The adverse rulings complained of and the Court's control of its docket are no basis for recusal.

The adverse rulings [Attorneys] complain of are no basis for recusal. "A trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. Ct. App. 2008). "Tennessee trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts." *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003) (citing *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)).

3.    Appointment of independent third parties as the client and counsel in the divorce litigation.

- 12 -

The Court's statement that [Attorneys] "are wearing too many hats" is supported by the facts that [Attorneys] have pled that [Ms. Malone] is completely incapacitated, that they began exercising complete control as Attorneys in Fact over her in November 2021, and in that capacity are justified in seeking appointment as conservators over her person and estate. The Guardian ad Litem, a lawyer recommended by [Attorneys], concluded in her report that the Court should appoint a neutral third party to serve as conservator of the estate and person of [Ms. Malone].

The roles [Attorneys] played included acting as Attorneys in Fact for [Ms. Malone], which placed them in [Ms. Malone's] stead in the post-divorce matter. They were, therefore, not only the client in the divorce case but were also litigation counsel. In such dual roles they were hiring and paying themselves to implement their decisions for [Ms. Malone] in the divorce action. The Court was properly concerned that [Attorneys'] role as Attorneys in Fact and, if appointed, Conservators, would give them alone the power [to] decide the course of the divorce litigation and the conservatorship litigation, how to bill for it, how much to bill for it, and how to pay themselves from [Ms. Malone's] assets.

Mr. Autry disclosed to the Guardian ad Litem that he and Ms. Bleavins had been representing [Ms. Malone] in the divorce litigation on an hourly basis, but changed that fee agreement to a contingent fee agreement. The Court believes that it is in [Ms. Malone's] best interest to have an independent third party evaluate whether such a change is fair and reasonable, and to evaluate whether proper procedures have been followed in making such a change.

[Attorneys] prepared estate planning documents for [Ms. Malone] that appoint Ms. Bleavins as Trustee of a long-term trust. The potential benefit to Ms. Bleavins of serving in that capacity creates a conflict of interest for Ms. Bleavins if Ms. Bleavins serves as both the client and lawyer in the post-divorce matter because a settlement in that matter could affect [Ms. Malone's] estate planning documents and Ms. Bleavins' appointment.

In a conservatorship action, the Court must act in the best interests of [Ms. Malone]. "Although a conservator plays a most important fiduciary role, it is significant to note that the court itself is ultimately responsible for the disabled persons who come under its care and protection." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006) (quoting *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995)).

The Court's decision to remove [Attorneys] from the post-divorce matter was based on what the record shows is in the best interest of [Ms. Malone]. The Court stated during the May 4, 2023 Status Hearing that there is a "potential financial conflict of interest . . . therefore it's better to have a neutral attorney serving in the post-divorce action and in the appeal of the emergency petition." "Whether a conservator has a conflict of interest concerning a particular matter is relevant to what is in the best interest of the ward." *AmSouth Bank*, 253 S.W.3d at 645. The removal of [Attorneys] from the post-divorce matter was based on [Ms. Malone's] best interest. It does not show any evidence of bias or prejudice.

C.     Communication with the Guardian ad Litem.

Movant criticizes the Court's "*ex parte*" communication with the Guardian ad Litem. In conservatorship cases the Guardian ad Litem is not an advocate for [Ms. Malone] or for either party but is, by statute, "an agent of the court." Tenn. Code Ann. § 34-1-107(d)(1). The case law limiting communication between a Guardian ad Litem and a trial judge in child custody matters does not apply to conservatorship actions. The title may be the same, but the role of the Guardian ad Litem is vastly different in conservatorship actions and divorce cases.

[Attorneys] present no facts that support any argument that the Court's communications with the Guardian ad Litem somehow demonstrate bias. Even in a divorce case, when the Guardian ad Litem *is* an advocate:

> A claim of bias or prejudice must be based on facts, not speculation or innuendo; [movant seeking recusal] "must come forward with some evidence" to support her assertions of bias or partiality. *Eldridge v. Eldridge*, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002) (quoting *Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)); *see Todd v. Jackson*, 213 S.W.3d 277, 282 (Tenn. Ct. App. 2006); *see also Walker v. People*, 126 Colo. 135, 248 P.2d 287, 295 (Colo. 1952) (en banc, holding that "[s]uspicion, surmise, speculation, rationalization, conjecture, innuendo, and statements of mere conclusions of the pleader may not be substituted for a statement of facts[.]"]

*Runyon v. Runyon*, 2014 WL 1285729 at *9 (Tenn. Ct. App. 2014). The court in *Runyon* concluded that a court's communication with a Guardian ad Litem did not in itself demonstrate bias or prejudice warranting recusal. *Id.*

- 14 -

As is set forth above, [Attorneys'] complaint comes too late. [Attorneys] admit that they were aware of the Court's communication with the Guardian ad Litem on January 10, 2023. They raised no issue at that time because at that time [Attorneys] were gambling that the Court would continue to make rulings they believed were favorable to them. They waited too long to raise this issue. *Boren v. Hill Boren*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017).

Movant has presented no fact — or even argument — that the Court's communication with the Guardian ad Litem demonstrates or resulted in any prejudice to any party. The Court has acted properly at all times in its communications with the Guardian ad Litem. This is no grounds for recusal.

D.    Contempt citation and service of summons.

[Attorneys] argue that the Court's citation of [Attorneys] for contempt is evidence of bias. The record shows that the Court issued an order verbally in open court on April 11, 2023 and by written order on April 26, 2023 requiring [Attorneys] to take an action they admit they have not taken. The Court directed [Attorneys], as Attorneys in Fact for [Ms. Malone], to retain Leslie M. Gattas as counsel for [Ms. Malone] in the post-divorce matter and to retain Lynn W. Thompson to file the brief and conduct oral argument in the appeal of the emergency conservatorship No. PR-24316. The order was clear, specific and unambiguous. [Attorneys] did not comply with the order. Believing that a ruling is in error is no grounds for disobeying an order. "An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. [Even] [e]rroneous orders must be followed until they are reversed." *Konvalinka v. Chattanooga-Hamil. Cty. Hosp*, 249 S.W.3d 346, 355 (Tenn. 2008); Tenn. Code Ann. § 29-9-102. The record shows that [Attorneys] did not comply with the April 11 and 26, 2023 orders.

The Court issued a summons, with the Orders setting the show cause hearing attached, to be certain that [Attorneys] had notice of the hearing. The court charging contempt for ignoring its order is the appropriate judge to hear such a contempt charge. *Herrera v. Herrera*, 944 S.W.2d 379, 392 (Tenn. Ct. App. 1996). The order[] setting the show cause hearing was well known to all counsel in the case. Service of the summons in the presence of other counsel who already had notice of that contempt hearing is in no way any evidence of any bias on the part of this Court. It was simply a ministerial, procedural step the Court took to be sure of clear notice to [Attorneys] of the contempt hearing required by their failure to comply with this Court's order of April 26, 2023. The Court's citation of [Attorneys] for contempt and its service of a summons are not grounds for recusal.

- 15 -

The Motion for Recusal does not present facts that demonstrate that the Court is biased or []partial, that the Court has been prejudiced by a source outside this litigation, that the Court's adverse rulings are the result of bias, or that a reasonable person, knowing the facts known to the Court, would find a basis for questioning the Court's impartiality or would find the appearance of bias.

(Internal citations and footnote omitted.)

Attorneys thereafter timely filed this accelerated interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, from the trial court's June 2, 2023 order denying recusal. Attorneys filed a motion to stay the trial court proceedings during the pendency of this appeal, which was granted by this Court on June 14, 2023. The pending stay was later clarified in this Court's August 8, 2023 order. This Court directed Mr. Malone to file an answer to Attorneys' petition filed with this Court.

In the Tennessee Rule of Appellate Procedure 10 extraordinary appeals pending before this Court, with this Court's stay order still generally in effect, the Court remanded the case involving the pending Rule 10 applications to the trial court "for the limited purpose of adjudicating" Attorneys' motions to alter or amend pending in the trial court. In addition to considering the pending motions to alter or amend, the trial court conducted an evidentiary hearing, which was outside the limited remand. Based on the trial court's actions, Attorneys filed a motion in this Rule 10B appeal on November 19, 2023, asking this Court to declare all orders entered after October 31, 2023 to be void and for this Court to issue a writ of mandamus to the trial judge preventing him from conducting any proceeding or entering any order in this case. This Court granted Attorneys' request that certain orders be declared void because the Trial Court did not have jurisdiction on remand to conduct an evidentiary hearing and enter further orders. However, this Court denied the request for writ of mandamus as being moot due to the stay that remains in effect pending resolution of this appeal.

## II. Issues Presented

Attorneys present six issues for our review, which we have restated as follows:

1. Whether the trial judge demonstrated bias requiring recusal when the judge contacted an attorney from the law firm of Williams McDaniel to inform the attorney of an open position at another law firm.

2. Whether the trial judge demonstrated bias requiring recusal by entering court orders without conducting an evidentiary hearing and making findings of fact.

- 16 -

3. Whether the trial judge demonstrated bias requiring recusal by revealing sensitive information and documents protected by attorney-client privilege and obtained by *ex parte* communications.

4. Whether the trial judge demonstrated bias requiring recusal by causing an attorney to be served during open court with a summons for a show cause hearing issued by the judge.

5. Whether the trial judge demonstrated bias requiring recusal by refusing to conduct hearings on multiple motions prior to the hearing to appoint a permanent conservator.

6. Whether the aforementioned issues taken together demonstrate bias by the trial judge requiring recusal.

## III. Standard of Review

Concerning the standard of review applicable to Rule 10B petitions, the Tennessee Supreme Court has recently explained:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis*[*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564 [(Tenn. 2001)]); *see also State v. Griffin*, 610 S.W.3d 752, 757–58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.
>
> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).
>
> Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606

- 17 -

S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

*Adams v. Dunavant*, 674 S.W.3d 871, 878-79 (Tenn. 2023).

## IV. Merits of Recusal Motion

On appeal, Attorneys point to several occasions throughout the proceedings when the trial judge has entered court orders, many that include findings of fact, without first conducting evidentiary hearings on the issues involved. Attorneys assert that these actions by the trial judge demonstrate bias against Attorneys. Additionally, Attorneys argue that the trial judge demonstrated bias against them when he declined to address Attorneys' outstanding motions prior to proceeding with an evidentiary hearing. Attorneys further note that the trial judge had maintained that a best interest hearing was required before he could address any of Attorneys' outstanding motions.

In the order denying judicial recusal, the trial judge found that the adverse rulings rendered against Attorneys and the trial court's control of its own docket did not constitute a basis for recusal and that Attorneys' complaint about certain rulings was untimely. Additionally, the trial court explained that due to a change in Attorneys' fee for representation in the post-divorce contempt action,[7] the trial judge found it to be in Ms. Malone's best interest for an independent third party to evaluate the arrangement. The trial judge denied that there was any bias or prejudice involved in his ruling to remove Attorneys from the post-divorce matter, explaining that such ruling was in Ms. Malone's best interest.

---

[7] Mr. Autry allegedly informed the GAL that although he had initially been representing Ms. Malone for an hourly fee in the post-divorce contempt action, the fee structure had been changed to a contingency fee arrangement.

- 18 -

We note that the only order this Court may review for its procedural correctness and decision on the merits in a Tennessee Supreme Court Rule 10B recusal appeal is the trial court's order denying a motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings . . . ."). Therefore, we make no determination of correctness regarding the trial court's other orders entered in this matter, only whether those actions demonstrate bias on the part of the trial judge. "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994); *see also State v. Reid*, 313 S.W.3d 792, 816 (Tenn. 2006). In other words, "if the bias is alleged to stem from events occurring in the course of the litigation, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014).

In the instant case, the trial judge's actions of entering certain orders without first holding evidentiary hearings, even if in error, do not demonstrate pervasive bias sufficient to deny the litigants a fair trial. We note that an evidentiary hearing was scheduled prior to the filing of this Rule 10B appeal in accordance with the trial court's acknowledgment that conducting a hearing before ruling constituted a better course of action. We further note that the trial judge's action of making findings without a hearing early in the emergency conservatorship case benefitted Attorneys. Similarly, the trial judge's decision to postpone ruling on pending motions until after he was able to conduct an evidentiary hearing does not demonstrate bias sufficient to justify recusal. Further, these actions by the trial court and any alleged error may be addressed in a subsequent appeal filed with this Court regarding those orders.[8]

Likewise, Attorneys challenge the trial judge's action of causing the court officer to serve process on Mr. Autry in the courtroom during the May 17, 2023 status conference. The trial judge explained in the order denying recusal that he was verifying that Attorneys had notice of the upcoming contempt hearing, noting that all counsel in the pending court cases already had knowledge of the contempt allegations. We note that Mr. Autry was not present during the May 4, 2023 status conference during which the trial judge verbally announced that Attorneys were being held in contempt of court, and the initial summons was issued one day prior to the hearing. There is a dearth of evidence that the trial judge directed service of process during the status conference in order to humiliate or demean Mr. Autry. The trial judge's action in this regard does not rise to the level of demonstrating bias against Attorneys sufficient to justify recusal.

---

[8] There are currently two applications involving Tennessee Rule of Appellate Procedure 10 appeals pending before this Court.

- 19 -

Attorneys further argue that Judge Townsend demonstrated bias against them when he obtained privileged information through *ex parte* communications with the GAL and relied on these hearsay statements and privileged documents when making his ruling. Attorneys specifically point to the trial judge's knowledge and statements regarding the beneficiaries of Ms. Malone's will prior to the filing of the GAL's supplemental report. The trial judge, however, expressed in his order denying recusal that the court had "acted properly at all times in its communications with the Guardian ad Litem" and that the role of GAL in a conservatorship action is not that of an advocate but of "an agent of the court," citing to Tennessee Code Annotated § 34-1-107(d)(1).[9] The trial judge denied any prejudice with reference to his conversations with the GAL.

Even assuming, *arguendo*, that the trial judge's communications with the GAL were improper, an *ex parte* communication will require judicial recusal only if the communication "creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." *See Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014). In *Runyon*, the trial judge reached out to the GAL, soliciting information regarding a parent's home. 2014 WL 1285729, at *3. This Court held that the information requested was inconsequential to the merits of the case and that the *ex parte* communication between the judge and the GAL did not require recusal. *Id.* at *10.

In the case at bar, Attorneys allege that information regarding the beneficiaries of Ms. Malone's will was provided to the trial judge during *ex parte* communications with the GAL due to the judge's knowledge of the information prior to the filing of the GAL's supplemental report. "A claim of bias or prejudice must be based on facts, not speculation or innuendo." *Runyon*, 2014 WL 1285729, at *9. Attorneys have presented no evidence that this alleged *ex parte* communication "creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." *Id.* We determine that this action by the trial judge does not rise to the level of demonstrating bias against Attorneys such that recusal is required.

Attorneys also argue that the trial judge's bias is reflected by his action of contacting an associate attorney at the firm of Williams McDaniel for the purpose of informing her of a probate job opening in another law firm. In their brief, Attorneys characterize this act as "soliciting an attorney to leave Williams McDaniel, PLLC," for another law firm, Evans Petree, PC, that represents the opposing party in the post-divorce contempt action. In his order denying the recusal motion, the trial judge stated that he was simply informing Ms. Palmer of a job opening, just as he had informed another lawyer in the community about

---

[9]Tennessee Code Annotated § 34-1-107(d)(1) (2021) provides:

> The guardian ad litem owes a duty to the court to impartially investigate the facts and make a report and recommendations to the court. The guardian ad litem serves as an agent of the court, and is not an advocate for the respondent or any other party.

the job opening. The trial judge explained that he had expressed to Ms. Palmer that he was not recommending her, had not given her name to the law firm, and was not asking her to apply for the position. In addition, the trial judge denied making any negative comments about her employer during the telephone conversation with Ms. Palmer.

The telephone call to the attorney did not involve either the conservatorship case or the post-divorce matter, and there is no evidence that disparaging comments were made regarding Williams McDaniel. We therefore determine that the telephone call between the trial judge and the associate attorney at Williams McDaniel did not rise to the level of demonstrating bias by the trial judge requiring his recusal.

Additionally, we note that, during the pendency of this appeal, Attorneys filed a motion in this matter alleging further conduct by the trial judge that occurred after their petition for recusal was addressed by the trial judge.[10] Pursuant to Tennessee Supreme Court Rule 10B, our review in this appeal is limited to the trial court's denial of the recusal motion. *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *6 n.3 (Tenn. Ct. App. Feb. 11, 2014) (declining to consider additional allegations of bias raised on appeal when not included in the initial motion for recusal filed in the trial court). Therefore, we will not consider the additional allegations raised by Attorneys in their November 19, 2023 motion. Those allegations must first be presented to the trial judge in a motion for recusal.

Upon thorough review of the record presented to us by the parties[11] and upon considering cumulatively all of the above actions by the trial judge, we conclude that Attorneys have failed to produce evidence that would prompt a person of ordinary prudence in the trial judge's position, with knowledge of all facts known to the trial judge, to find a "reasonable basis for questioning the judge's impartiality." *See Adams*, 674 S.W.3d at 878. Therefore, we discern no error in the trial judge's denial of Attorneys' motion for recusal.

## V. Conclusion

For the foregoing reasons, we affirm the trial judge's denial of the motion for judicial recusal. The stays of this case imposed in this Court's June 14, 2023 and August 8, 2023 orders are hereby lifted, and this case is remanded for further proceedings. The

---

[10] No motion to consider post-judgment facts was filed during the pendency of this appeal.

[11] Although not explicitly stated as such in the rule, it is clear that the only record the appellate court generally will have in expedited appeals under Rule 10B is the record provided by the appellant with his or her petition pursuant to the mandatory language of section 2.03 of the rule. *See* Tenn. Sup. Ct. R. 10B, §2.03 ("The petition shall be accompanied by a copy of the motion and all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of any other parts of the trial court record necessary for determination of the appeal.").

- 21 -

costs of this appeal are taxed to the Appellants, Edward T. Autry and Hannah Elizabeth Bleavins.

s/Thomas R. Frierson, II

THOMAS R. FRIERSON, II, JUDGE